KATHRYN J. HEINSOHN,

*vs.*

JAMES T. CHANDLER, JR.

*New Castle, Aug. 16, 1938.*

*Joseph Donald Craven,* for complainant.

*James R. Morford,* of the firm of Marvel, Morford, Ward & Logan, for defendant.

THE CHANCELLOR: When the defendant, following the final decree in divorce of March 4, 1935, reduced the weekly payments to twenty-five dollars, he entertained the view, as expressed by his attorney in the letter of March 30, 1936, that since the complainant was no longer his wife the agreement, in so far as it contemplated support for her, was possibly terminated. In his attorney's letter of March 25, 1937, however, the twenty-five dollar weekly payments are stated to have been for "the support of wife and children," which expression is at variance with the previously expressed view.

Did the granting of the final divorce terminate the defendant's obligation under the agreement to contribute to his former wife's support? The agreement itself contains no provision that divorce should end the obligation to contribute to the wife's support. That being so, the mere fact of a divorce had no terminating effect. *Seuss v. Schukat,* 358 *Ill.* 27, 192 *N. E.* 668, 95 *A. L. R.* 1461, 1467; *Galusha v. Galusha,* 116 *N.Y.* 635, 22 *N.E.* 1114, 6 *L.R.A.* 487, 15 *Am. St. Rep.* 453; *Clerk v. Fosdick,* 118 *N. Y.* 7, 22 *N. E.* 1111, 6 *L.R.A.* 132, 16 *Am. St. Rep.* 733; 19 *C.J., p.* 250, § 584; 9 *R.C.L., p.* 536, § 356; 1 *Bishop, Marriage and Separation,* § 1282, *p.* 547.

The solicitor for the defendant states that in many if not in all the jurisdictions which hold that absolute divorce does not terminate a seperation agreement unless is terms specifically so provide, the law permits the allowance of permanent alimony in the divorce proceedings, whereas in Delaware permanent alimony is not allowable in divorce proceedings, citing *Sidwell v. Sidwell,* 35 *Del.* 322, 5 *W. W. Harr.* 322, 326, 165 *A.* 334. From this circumstance it is argued that in states where alimony is allowable under the divorce statutes, a duty to support a divorced wife is laid

by the law on her husband, and so a seperation agreement that provides for payments to the wife after the marriage relation is dissolved is in performance of a legal obligation; whereas in a state such as Delaware where permanent alimony is not allowable by the law, no legal duty to support a divorced wife is predicable, and therefore a separation agreement that operates after divorce is not grounded in a general legal obligation, and so is not enforceable.

The argument is not acceptable. It overlooks the fact that a party may contract to do things which prior to his agreement no legal duty rested on him to do. Contract obligations do not need to rest on some prior general legal duty for their sanction.

In so far, then, as the defendant attempts to justify the reduction of his weekly payments from forty-five dollars to twenty-five dollars by the divorce which had been granted, his position is not tenable. If a husband enters into a separation agreement obligating him to provide money payments to his wife, if he intends that his payments should cease upon her subsequent divorce or re-marriage, it would be the part of precaution on his part to have the agreement say so.

But the defendant justified the reduction on another ground, viz., that his financial circumstances had changed due to the reduction of his weekly salary from one hundred dollars to fifty dollars. Now had he stood on that ground and taken the necessary steps to bring it forward, his case would be different. The agreement provided that if a modification was desired to be made because of a change in the financial circumstances of either party, a request for modification should be made to the other in the form of a notice as prescribed in the agreement. The defendant made no request and gave no notice. He pursued the *ex parte* course of just sending less money. Not having complied with the condition precedent necessary under the agreement to the

lessening of his burden, I am of the opinion that he should pay the arrearages of twenty dollars per week down to March 28, 1937. The pertinency of this date will hereafter appear.

This brings me now to consider whether the defendant should be decreed to make payments for the period after that date and continue to make them throughout the future.

The agreement is not limited in time. The solicitor for the defendant contends that it is really an agreement terminable at any time. He treats it as a sort of armistice arrangement whereby cessation of legal conflict over support and custody of the children was suspended so long as the parties were mutually satisfied with its terms as originally written or as subsequently modified to their mutual satisfaction, and that if at any time this mutuality of satisfaction should cease, the only right which either party would have would be to renew the legal conflict and resort to such proceedings as might be available under the law, independently of the agreement, for settlement of the question of support for the wife and children and for adjudication of the custody of the latter. If this be the correct interpretation of the contract, then for practical purposes it is terminable at any time.

I find it unnecessary to express an opinion upon whether such is the meaning of the agreement. Let the meaning be one way or the other, certain it is that the defendant had the right to request a modification of its terms because of a change in the financial responsibility or circumstances of either himself or his former wife, and to negotiate for such an adjustment as would be mutually acceptable. That his own financial circumstances had changed was asserted by him on the occasion of the halving of his salary on March 2, 1936. That the complainant's financial circumstances changed when she remarried, is obvious, for then she could look to a husband for support. The defend-

ant desired in March of 1937 to discuss the altered circumstances. The letter of his attorney under date of March 25, 1937, specifically suggested that an adjustment by mutual agreement was in order. Now if it be said that this was no such notice to the complainant as is contemplated by the agreement, the answer is that it appears to have been all that the complainant's own conduct admitted as possible. From the testimony, I am persuaded that the complainant during the interval between her remarriage on March 5, 1937, and her departure to her new home in Cleveland on March 28, 1937, deliberately kept her former husband in the dark concerning her whereabouts. Her own lawyer in the latter days of that period appears to have had difficulty in locating her. Her motive may have been to manoeuvre around the threatened *habeas corpus* proceedings which her lawyer, innocently on his part, had succeeded in persuading the defendant's lawyer to hold back.

At all events, the complainant went off with the two children whom the agreement committed to her custody to Cleveland. She did not tell the defendant her address. He casually learned it about seven months later. She did not let him know her name. How could he, through a period of seven months, deliver to her either personally or by mail notice of his desire to discuss a modification of the agreement? Furthermore, what had become of his right to have the two children, whose custody he had entrusted to the complainant, visit him? For seven months he did not know of their whereabouts. Indeed it was not until the complainant came to Delaware to testify in this cause in April of this year, that he was able through *habeas corpus* proceedings to secure a definite arrangement for the children's visits. And those arrangements, by the way, may prove illusory in view of the complainant's absence from this jurisdiction. The complainant breached the agreement relating to the right of the defendant to see the children and so disqualified herself against complaining. *Duryea v. Bliven,*

122 *N. Y.* 567, 25 *N. E.* 908; *Muth v. Wuest,* 76 *App. Div.* 332, 78 *N. Y. S.* 431; *James, et al., v. Golson,* (*Tex. Civ. App.*) 174 *S. W.* 688.

As she had a right in March, 1936, to express her views in a discussion with the defendant of the matter of reduction in the weekly payments with a view to its mutually satisfactory adjustment, so the defendant had a right to discuss with her the same subject upon her remarriage. Her conduct deprived him of that right. He continues to be deprived of that right.

Equity will not afford relief on a contract on behalf of a party thereto who is in default. *Electrical Research Products v. Vitaphone Corp.,* 20 *Del. Ch.* 417, 171 *A.* 738. Now, for the period from March 9, 1936, to March 28, 1937, the complainant was not in default and the defendant was; and for the period from March 28, 1937, to when the bill was filed the complainant was in default. The remedy sought is that of specific performance of a continuing contract. It would seem just that during the period when the defendant was in breach of his agreement without an accompanying default on the part of the complainant, he should be required to fulfill his promise; and that he should not be required so to do for the period after which the complainant's default was committed. In *Duryea v. Bliven, supra,* the Court of Appeals of New York said that "no recovery could be had for her [the wife's] benefit, while she was refusing to perform on her part."

The decree should be framed as just indicated, and the costs should be divided between the parties.