129 A.2d 253 (1957)
Marion W. WALTER, Plaintiff,
v.
Frederick WALTER, Defendant.
Court of Chancery of Delaware, New Castle.
February 8, 1957.
*254 David B. Coxe, Jr., Wilmington, for plaintiff.
John VanBrunt, Jr., and Courtney H. Cummings, Jr., of Killoran & VanBrunt, Wilmington, for defendant.
SEITZ, Chancellor.
Plaintiff seeks a declaration that defendant must continue to make support payments to her under their separation agreement even though the defendant has since obtained a divorce from plaintiff on the grounds of adultery occurring after the execution of the agreement.
Plaintiff and defendant were married on February 19, 1938, and three children were born of the marriage. In October 1954, they separated. The defendant-husband remained at the family domicile while the plaintiff-wife set up new living quarters. On November 10, 1954, a separation agreement ("agreement") was executed by the parties.
The agreement first recites that because of disputes and irreconcilable differences the parties have heretofore separated; that in view of their intention to live apart for the rest of their lives they are desirous of settling their "property rights" and agreeing on terms for the wife's support and the support, custody and education of the children.
The first two numbered paragraphs are of no moment.
Paragraph 3 provides for the disposition and settlement of their personal property. After acknowledging that the contents of each residence was the exclusive property of the occupant, the husband assigned to the wife the title to the station wagon.
Paragraph 4 provides for the transfer of what was concededly their jointly owned family real estate to the husband.
Paragraph 5 deals with the custody of the children and provides, inter alia, that the husband would have custody of two of the children while the wife would have custody of the youngest child.
Paragraph 6 provides that the husband should make monthly support and maintenance payments to the wife, "so long as she does not remarry". Out of the sum paid, the wife was also to pay for the support of the child in her custody. This paragraph also provides, inter alia, for the husband to pay for surgical, hospital, and nursing expense of the wife and children upon certain terms and conditions.
Paragraph 7 provides for the husband to maintain life insurance policies and to name the wife as primary beneficiary thereon "so long as she does not remarry". He covenanted not to change such designation unless or until his wife's death or remarriage.
Paragraph 8 deals with certain tax matters while Paragraph 9 states that the wife will, at the husband's request, execute joint tax returns as to income earned by him.
Paragraph 10 provides that the husband will keep in full force and effect a will bequeathing not less than one third of his estate to the wife if she survives him and does not remarry.
By Paragraph 11 each party releases any and all rights which he or she may have or acquire as spouse to share in the estate of the other party upon the latter's death.
Paragraph 12 is not relevant. Paragraph 13 provides, among other things, that the "Conduct of the Husband and Wife, other than as provided herein shall not affect the performance of this Agreement". Paragraph 14 provides that the agreement should be governed by Delaware law.
In Paragraph 15, the wife agrees to accept the provisions of the agreement concerning *255 her support and maintenance in lieu of and in full and final settlement of all claims which she may now or hereafter have against the husband for support and maintenance. The same applies to the children.
It is recited that each party had independent legal counsel in connection with the execution of the agreement.
In July 1955, the defendant instituted divorce proceedings against plaintiff on the grounds of adultery allegedly occurring subsequent to the execution of the agreement. The divorce action was contested by plaintiff. In July, 1956, a decree nisi was entered for the defendant-husband. It became final in October of 1956. Thereafter the Family Court took the custody of the youngest child from the wife.
Defendant had notified plaintiff that as of the date the divorce became final he would cease to make the support payments called for by the agreement. Plaintiff thereupon filed this action and, after the defendant answered, moved for summary judgment. This is the decision thereon. The parties agree that the material facts are not in dispute. It is also agreed that for purposes of disposing of the present motion the wife's adultery is established.
This matter can best be resolved by taking up the defenses asserted by defendant. He first contends that plaintiff does not come into this court with "clean hands".
Defendant says the Delaware public policy on this subject is incorporated generally in two Delaware statutes which make clear that by acts of adultery the wife forfeits all property rights, whether contingent or otherwise, devolving upon her or arising from the marriage relationship.
The first statute is 12 Del.C. § 908, which provides as follows:
"Forfeiture of dower and other benefits
If a wife willingly leaves her husband and goes with an adulterer, or willingly lives in adultery in a state of separation from her husband not occasioned by his fault, in either case, unless her husband be reconciled to her and suffer her to dwell with him, or if she be convicted of wrongfully killing her husband, she shall forfeit her dower and all demands, as his widow, upon his real or personal estate, and any estate, charge, or benefit, settled upon her, or upon trust for her, in lieu of dower."
Since the language of the statute seems reasonably clear I think it unnecessary to discuss the possible applicability of the principle that forfeiture statutes are strictly construed.
As I read the statute it deals only with the rights of a widow in her deceased husband's property or any interest settled upon her in lieu of dower. However, as hereafter decided, I do not believe the agreement here substituted the benefits of the agreement for the widow's right to dower. Rather there was a settlement which also included a waiver of dower at a time when the husband held no real estate in his sole name. But in any event I do not believe that 12 Del.C. § 908 is applicable because it deals only with the forfeiture of a widow's rights. From this I conclude that the forfeiture is to operate at the date of a husband's death, and not before. My conclusion is drawn from the use of the word "widow" in the statute, as well as the further provision that a subsequent reconciliation and cohabitation prevent a forfeiture.
I therefore conclude that 12 Del.C. § 908 cannot be operative to nullify the support payment provision of the agreement.
The next statute relied upon by defendant as a defense to this action is 13 Del.C. § 1532, which reads as follows:
"When the cause of divorce is the adultery of the wife, she shall forfeit *256 any estate, charge or benefit settled upon her, or in trust for her use, in lieu of dower."
I assume that this statute may be applied at least defensively in equity. This being so we must examine the agreement. There is no language in the agreement which explicitly provides that any part of the consideration is to be in lieu of dower. But assuming that the test is one of substance rather than mere verbiage, can it be said that this agreement was in whole or in part in lieu of dower?
By this agreement the parties fully settled their property rights and personal obligations. In order to make certain it would not be modified in the future by operation of law they inserted a provision by which each waived any right to take against the other's will. The provision would of course foreclose any claims of the wife to dower. But it can hardly be said that under this agreement the wife, by waiving dower, was receiving any estate, charge or benefit in lieu of dower. This is accented by the fact that the husband then owned no real estate in his sole name.
I conclude that the agreement did not transfer an interest to the wife in lieu of dower and therefore was not subject to the provisions of the statute. Indeed, a contrary conclusion would operate to forfeit the substantial property rights which the wife transferred to the husband under the agreement.
But even if we assume that the statute has some application to some part of this agreement, I do not believe it would be a bar to this action. I say this because the court is here asked only to enforce the support provision of the agreement which provides as follows:
"The Wife acknowledges that the provisions herein for her support and maintenance and for the support, maintenance and education of the Children are fair, adequate and reasonable and satisfactory to her. Accordingly she accepts the same in lieu of and in full and final settlement and satisfaction of any and all claims and rights that she may now or hereafter have against the Husband for her support and maintenance and for the support, maintenance and education of the Children."
The quoted language makes clear that the support provision was calculated exclusively on the basis of the husband's existing obligation to support his wife and children. Thus no part of it could be said to be an "interest" transferred to her in lieu of dower. This being so no part of the support provision was forfeited under the statute by the subsequent divorce on the ground of adultery.
I next consider defendant's contention that the public policy of the state concerning adultery should militate against the granting of relief here and that it should be implemented by applying the clean hands doctrine.
Defendant contends and plaintiff denies that the adultery constitutes unclean hands in regard to the matter in litigation. Plaintiff's counsel points out that she is suing on a contract negotiated at arms' length and that there is no charge that her conduct with respect thereto was in any way objectionable. Consequently, her counsel argues that her adultery was not "in regard to the matter in litigation" and thus the clean hands' doctrine is inapplicable.
The agreement was executed by each party after receiving the advice of his or her own attorney. There is nothing in the language of the contract itself which would render it defeasible on the basis of subsequent misconduct. Indeed, the parties sought by the agreement to exclude subsequent conduct except as mentioned in the agreement.
The English courts and most of the courts in this country which have considered this problem have ruled that the wife's subsequent adultery does not prevent the *257 enforcement of the agreement. See Lindey, Separation Agreements and Ante-Nuptial Contracts (Rev.Ed.) pp. 445-6; 8 A.L.R. 1452. The reasoning of the cases is that the court is enforcing a validly executed contract, based on considerations therein identified, and unless made a term or condition thereof, the wife's subsequent misconduct is irrelevant. I accept and adopt the majority view. Moreover, I do not believe the wife's subsequent adultery constitutes unclean hands in regard to the matter in litigation. The same result follows even though the wife is divorced on the grounds of adultery. See Hann v. De-Freest, Sup., 178 N.Y.S. 414; In re Muhr's Estate, 59 Pa.Super. 393.
Defendant relies principally upon certain New York cases. The first is Roth v. Roth, 77 Misc. 673, 138 N.Y.S. 573, which was rejected by a later and higher court decision in New York. See Randolph v. Field, 165 App.Div. 279, 150 N.Y.S. 822. As recently as 1943, the Randolph case was cited with apparent approval by the New York Court of Appeals in Mohrmann v. Kob, 291 N.Y. 181, 51 N.E.2d 921.
Defendant also relies upon the New York cases of Boate v. Boate, 114 Misc. 321, 187 N.Y.S. 321, affirmed by Supreme Court of New York without opinion, 115 Misc. 689, 190 N.Y.S. 914, and Taylor v. Taylor, Sup., 26 N.Y.S.2d 711. These lower court cases apparently adopted the reasoning that an agreement for support is in lieu of the husband's duty to support; that when a husband obtains a divorce, the support agreement is terminated because it was not within the contemplation of the parties that the husband's obligation under the agreement would survive a decree of divorce.
First of all, I believe these cases are, despite an attempt to distinguish it, inconsistent with the New York Court of Appeals case of Galusha v. Galusha, 116 N.Y. 635, 22 N.E. 1114, 6 L.R.A. 487. But the conclusive answer here is that under the law of Delaware as set forth in Heinsohn v. Chandler, 23 Del.Ch. 114, 2 A.2d 120, 123, this alleged distinction is without merit. That case involved an action by a divorced wife to recover support under a separation agreement. The defendant there made the argument that since the husband in Delaware had no obligation in law to support his divorced wife, there could be no consideration for an agreement so providing. The Chancellor answered,
"It [the argument] overlooks the fact that a party may contract to do things which prior to his agreement no legal duty rested on him to do."
In other words, even though a husband would have no legal duty under Delaware law to support his wife after divorce, he could prior thereto agree to provide such support and be legally bound. The present agreement does not fail for want of consideration.
Defendant also relies upon the New Jersey Court of Chancery decision in Devine v. Devine, 89 N.J.Eq. 51, 104 A. 370, pointing out however that the case was overruled by the Court of Errors and Appeals of New Jersey in the case of Whittle v. Schlemm, 94 N.J.L. 112, 109 A. 305, 8 A.L.R. 1447. See also Thomas v. Thomas, 104 N.J.Eq. 607, 146 A. 431. I am unable to accept the reasoning of the court in the Devine case for the reasons given in the Schlemm case and because of the other authorities referred to herein.
The authorities also reject the argument that the wife's future chastity is an implied condition to the right of the wife to enforce an agreement for future support. The reasoning is the same, viz., the agreement fixes its terms and others are not to be implied. Indeed, to imply terms concerning the future conduct of these parties which would nullify the agreement would be to run contrary to the expressed intention of the parties.
I therefore conclude that plaintiff's adultery does not here constitute such unclean hands as would bar her from enforcing the *258 agreement. Needless to say, by this decision the court does not intend, subjectively at least, to impress any judicial imprimatur upon the plaintiff's penchant for extra-marital activity.
Finally, defendant argues that under a proper construction of the separation agreement it was to terminate when the husband obtained an absolute divorce on the ground of adultery. Defendant's argument goes like this: The agreement does not disclose that a divorce was intended or contemplated at the time the agreement was executed and therefore in executing it the husband did not visualize that it was to operate in a situation where he obtained an absolute divorce from his wife on the grounds of adultery.
Defendant concedes that the agreement contains no explicit provision that it is to terminate upon divorce. This makes pertinent the Chancellor's language in Heinsohn v. Chandler, above:
"The agreement itself contains no provision that divorce should end the obligation to contribute to the wife's support. That being so, the mere fact of a divorce had no terminating effect."
The Chancellor added the caveat that if a husband,
"* * * intends that his payments should cease upon her [wife's] subsequent divorce or remarriage, it would be the part of precaution on his part to have the agreement say so."
The language is particularly pertinent when you consider that this language is in a reported opinion filed in 1938 and the present defendant was represented by counsel in connection with the execution of the agreement. It thus appears that the law of Delaware is contrary to defendant's contention.
Even if we view the matter as one requiring a construction of the provisions of the agreement to see whether it was intended that it was to be terminated by divorce, defendant is no better off. Paragraph 6 specifically provides that, "The Husband shall during the joint lives of the Husband and Wife * * * make the monthly payments provided therein * * * so long as she does not remarry". In Paragraph 7, he agreed to maintain certain life insurance with the wife "as primary beneficiary of the Policies so long as she does not remarry". In Paragraph 10 he agreed to leave his wife not less than one-third of his estate, "* * * if she survives him and does not remarry; * * *". "Wife" was used merely to identify the party and has no significance.
The frequent references to explicit terminating events would seem to exclude any inference that divorce, unmentioned, was also to be a terminating event. Certainly the thought of remarriage would have brought to mind the question of divorce and yet it was not mentioned. Defendant points to certain provisions but I do not pause to analyze them because neither alone nor in combination do they overcome the law of the Heinsohn case or the fair meaning of the provisions of the agreement.
I therefore conclude that the divorce did not operate to terminate the agreement.
Since there is no merit to any of the defenses asserted by the defendant, it follows that plaintiff's motion for summary judgment must be granted. However, since the plaintiff is no longer supporting the youngest child, she will receive the modified amount heretofore agreed to by the parties. If the defendant's income is further increased with a resulting obligation under the agreement to pay more money to the wife, the increase should be pro-rated in the ratio that now exists between the amount of the payment to the wife and the sum retained for the support of the youngest child.
Order on notice.