131 A.2d 185 (1957)
Jean Barnes MORTON, Plaintiff,
v.
William P. MORTON, Defendant.
Court of Chancery of Delaware, New Castle.
April 18, 1957.
*186 George T. Coulson, Wilmington, for plaintiff.
Stephen E. Hamilton, Jr., Wilmington, for defendant.
MARVEL, Vice Chancellor.
In order to define their mutual rights and obligations as husband and wife living separate and apart and to provide a plan for the maintenance and custody of their children, plaintiff and defendant on December 4, 1952 executed what is known as a separation agreement. The parties had actually separated in September of that year and prior to such separation had reached an understanding as to certain terms governing their future relations, the principal one being that payments by the husband for the support of his wife and their three children would approximate $200 a month. Thereafter by check dated September 30, defendant made a first payment to his wife of $209. He made a second payment of $200 by check dated October 30, and by separate checks dated November 28 and December 5, made a third payment of $200. In my opinion, however, discussions and negotiations between the parties and their attorneys prior to December 4, 1952 concerning the proposed terms of the separation were merely preliminary to the drawing up of a formal contract. Any prior oral undertakings by the parties concerning their mutual rights and obligations inconsistent with the terms of their unambiguous written agreement of December 4, 1952 may not be taken into consideration in resolving the present dispute, Compare North American Uranium & Oil Corp. v. South Texas Oil & Gas Co., Del.Ch., 129 A.2d 407.
The written agreement, the performance of which plaintiff seeks specifically to enforce, was prepared by and its execution witnessed by the parties' attorneys. It provides in its second paragraph for the monthly payment by defendant to plaintiff of the sum of $200 "* * * for the support and maintenance of herself and of * * *" the children. It is stated, however, in this same paragraph that such monthly payment was to be reduced by $33.33 upon each of the two daughters reaching the age of nineteen and a like amount upon the son reaching the age of twenty-two.[1] It is further provided in paragraph 2 that "* * * On the remarriage[2] of wife, said payments shall be reduced by the amount of $100.00."
Paragraph 3 of the agreement states: "As long as Husband shall perform his covenants under this Agreement, Wife agrees that he may carry the three children as dependents for income tax purposes until an entry of a final decree of divorce between the Parties."
Paragraph 11 states that: "All matters affecting the interpretation of this Agreement and the rights of the Parties hereto shall be governed by the laws of the State of Delaware * * *" and in paragraph 12 the parties agreed that "* * * in the event either of them shall at any time hereafter obtain a decree of divorce in a Court of competent jurisdiction, this entire Agreement or any parts hereof, or any subsequent modifications thereof, may, at the option of either party, become a part of such decree or divorce".
On April 6, 1955 the parties were divorced. Commencing with the monthly support payment due on April 30, 1955, defendant admittedly has paid less than $200 per month to plaintiff and as an incident to a decree of specific performance of the written *187 agreement plaintiff seeks[3] recovery of the difference between what she has received in the form of support from her husband since April 30, 1955 and the amount agreed on in the written contract.
Defendant contends that the parties intended that the obligation of the husband to support the wife was not to survive divorce and that the actions of the parties in relation to such agreement evidence such intention. In support of this contention defendant relies on an alleged understanding reached by the parties prior to December 4, 1952, the terms of their agreement in writing, and the parties' actions under the agreement.
As indicated above, parol evidence is not admissible to vary the terms of the written agreement and there is nothing in the agreement itself to the effect that the husband's contractual undertaking to support his wife and children was to change in any respect upon divorce. In fact, the provision for monthly payments of $200 is not broken down as between the wife and children, and except for the provisions concerned with reduced payments on the children reaching certain ages the only condition in the agreement for payment of less than $200 to the wife is upon her remarriage. Furthermore, I am satisfied that those actions of the parties, which are apparently inconsistent with the terms of the agreement, arose out of a misconception on defendant's part as to the meaning of such agreement rather than from a practical application of its terms.
In the case of Walter v. Walter, Del.Ch., 129 A.2d 253, the Chancellor had before him for decision the question of whether or not a husband's agreement to support his wife should be deemed to terminate on divorce in the absence of an express provision to such effect in the agreement sued upon. Citing the case of Heinsohn v. Chandler, 23 Del.Ch. 114, 2 A.2d 120, which holds that a husband in Delaware may voluntarily assume the obligation of supporting his wife after divorce, the Chancellor ruled that divorce in itself did not operate to terminate a support agreement. In so deciding the Chancellor pointed to specific provisions in the agreement before him which anticipated the possibility of remarriage, and there are similar references to remarriage in the separation agreement before me. Furthermore, in the preamble to the agreement of the present parties it is stated that it was the parties' desire to enter into a support agreement "* * * without prejudicing any rights of either with respect to any grounds for divorce which either of them may now have or hereafter have against the other * * *" and paragraph 3[4] of the agreement pertains to the manner in which children born of the marriage were to be carried as dependents before and after divorce. As stated by the Chancellor in Walter v. Walter, supra [129 A.2d 258]:
"Defendant concedes that the agreement contains no explicit provision that it is to terminate upon divorce. This makes pertinent the Chancellor's language in Heinsohn v. Chandler, above:
"`The agreement itself contains no provision that divorce should end the obligation to contribute to the wife's support. That being so, the mere fact of a divorce had no terminating effect.'

*188 "The Chancellor added the caveat that if a husband,
"`* * * intends that his payments should cease upon her [wife's] subsequent divorce or remarriage, it would be the part of precaution on his part to have the agreement say so.'"
It necessarily follows in view of the terms of the agreement that the parties' divorce as such had no effect on defendant's obligation to pay his wife $200 per month for her support and that of the children, and the fact that the wife temporarily accepted less than the stipulated amount due her does not, in my opinion, bar her from insisting that the agreement now be specifically enforced. The basis for the latter conclusion will be discussed in connection with disposal of defendant's contention that a new agreement superseded the written agreement.
Defendant also contends that plaintiff may not enforce the agreement sued upon because of unclean hands and laches and because she allegedly entered into a later agreement concerning her support.
While the written agreement is silent as to the identity and amount of family bills as of the date of the separation agreement, defendant contends that plaintiff fraudulently concealed from him the existence of a large grocery bill until after the formal support agreement was entered into on December 4, 1952 and that such concealment bars enforcement of the support agreement. It is conceded that this bill, which was due and owing in the amount of $883.93 as of January 1, 1952, had been reduced in the amount of only $18.63 as of December 4, 1952. Defendant claims that he knew nothing of the bill until demand was made on him in January 1953 by the creditor, Bramble and Draper. He then paid the bill. While defendant concedes that he had had conversations with his wife in the latter part of 1952 about moneys owed to Bramble and Draper, their regular grocer, he insists that these conversations had to do with 1952 billings. Defendant also points out that during 1952 Mr. Bramble had discussed his pre-1952 billings with plaintiff's father and that significantly plaintiff stopped worrying about the matter when the formal agreement was executed. I cannot, however, believe that defendant was unaware of such bill prior to the execution of the separation agreement. It is obvious that the parties were constantly in financial difficulties during the course of their marriage and that these difficulties were a prime factor in the ultimate destruction of their marriage. In the period immediately preceding the final break-up of the marriage, defendant was receiving "take-home" salary in the amount of approximately $440 a month. From this amount he would deduct approximately $100 for personal expenses, interest payments on loans and the like and deposit the balance in the parties' joint checking account. Plaintiff was expected to run the household on a theoretical monthly budget of approximately $310, a sum which was augmented from time to time by her earnings as a teacher. However, this amount was not always available inasmuch as defendant occasionally made small withdrawals from the joint account, and it is obvious from the record before me that the parties were never able to live within their income. Debts were a regular subject of conversation between the parties and it is inconceivable to me that defendant, who borrowed from time to time to make ends meet, was unaware of the family's inability to live on moneys made available to plaintiff for food and other staples and that he was specifically unaware, prior to December 4, 1952, of the fact of an accumulated pre 1952 indebtedness to the family grocer. The fact that his then attorney wrote on March 2, 1953 to plaintiff's then attorney of conversations between the parties some months before the separation concerning a back grocery bill which defendant thought "* * * had been reduced to around $200, under an agreement * * *" made by plaintiff, confirms my opinion that *189 defendant was not misled by plaintiff as to the fact of his pre 1952 indebtedness to Bramble and Draper. That plaintiff reduced this back bill by only $18.62 during 1952, despite her intention to make payments on it of at least $25 per month is, in my opinion, attributable to the fact that the 1952 grocery bills were not paid as presented. Payments to Bramble and Draper during 1952 were made by plaintiff in monthly amounts ranging from $125 to $150 depending on the availability of cash, and these payments did little more than keep the current account approximately in balance. Assuming that the bill in question is an integral part of the matter in litigation, plaintiff is not barred because of it from obtaining a decree of specific performance.
Defendant next contends that plaintiff and defendant made a new agreement in September 1955, which superseded the formal agreement of December 4, 1952, and that under the terms of such new agreement plaintiff was to receive and has received monthly payments of $125 in lieu of the stipulated $200 provided for in the formal agreement.
This defense is closely allied with defendant's earlier contention that plaintiff recognized that her right to support terminated on divorce. This so-called new agreement allegedly arose out of conversations between the parties following defendant's reduction of support payments to $100 a month as of April 30, 1955, the parties' divorce having become final on April 6 of that year. Defendant at that time took the position that the reduced payment was in accordance with the parties' agreement, pointing out that his payments should be reduced on divorce since plaintiff then became entitled to claim the children as dependents for income tax purposes. Plaintiff was shocked at this turn of events and consulted her attorney, who indicated that a suit for the full amount due under the agreement would be expensive. Without waiting for her attorney's definitive advice as to her rights, plaintiff elected to discuss the situation privately with defendant. Following such meeting, at which plaintiff urged that defendant contribute $30 or $40 additional for the childrens' benefit, defendant on October 31, 1955 sent plaintiff his check for $125. Defendant contends that an explanatory letter was enclosed with such check, stating that the payment was made in conformity with the parties' oral agreement, however, plaintiff has no recollection of receiving such note. In my opinion it is unnecessary to resolve this factual dispute because I am satisfied that whether or not the letter was received, the agreement of December 4, 1952 remains in force and effect, although defendant's case might be different had the agreement contained a clause looking to a renegotiation of its terms, Heinsohn v. Chandler, supra.
Upon divorce, defendant erroneously and unilaterally adopted a course of action based on the assumption that his contractual duty to support his wife had been thereby terminated. That this course of action was in error has been demonstrated earlier in this opinion and will not be further discussed. Furthermore, it is obvious that plaintiff, whatever views she may have entertained about the enforceability of the parties' written agreement after divorce, was not in a position to contest her husband's contentions during the summer of 1955. School was closed. Consequently she was not receiving supplementary earned income and desperately needed immediate cash for her children, one of whom was suffering from asthma. Significantly it was the children's needs which motivated her in bringing about the 1955 meeting with defendant. When defendant's check in the amount of $125 was received at the end of October and checks in the same amount in the months following, she had no alternative but to accept them for what they were, namely an improvement on the monthly checks she had received from April to October.
*190 Under Delaware law and the factual situation existing from September 1955 up to the present, there could be no real dispute concerning the meaning of the December 4, 1952 agreement insofar as it is concerned with support payments. It necessarily follows that a new agreement based on new consideration was not created in September 1955 or thereafter.
As to laches, I find that plaintiff acted with reasonable dispatch by proceeding to assert her rights under the written agreement through this action, which was filed in June 1956. If defendant meanwhile in the erroneous belief that his duty to support his first wife had come to an end changed his position by remarrying, he acted without having taken the precautions required by the law of Delaware, Heinsohn v. Chandler, supra.
On notice, an order will be entered directing defendant to abide by the terms of the parties' December 4, 1952 agreement. As an incident to the relief to be granted plaintiff such order will also provide for payment by defendant to plaintiff of the difference between the amount of support money received by her from him since April 30, 1955 and the amount provided for in the separation agreement.
NOTES
[1] It is stipulated that neither daughter has reached the age of nineteen and that the son is not yet twenty-two.
[2] It is also stipulated that the wife has not remarried.
[3] The complaint also contains a prayer for reasonable counsel fees, but a basis for such application has not been established.
[4] This provision appears merely to reflect current Treasury Department treatment of children as dependents when supported through alimony payments to a divorced wife as opposed to direct support by the father. On divorce, a husband in order to claim his children as dependents must actually support them independently of moneys includable in his wife's income. See § 71, Federal Income, Gift and Estate Taxation, Code, Rabkin and Johnson and U. S. Master Tax Guide, 1957 (C.C.H.) § 564.