ARSHT, Judge.
The matter arises in an action for divorce and is before the Court after an evidentiary hearing on the petitioner mother’s ancillary applications for orders directing the respondent father to contribute to the support of the parties’ daughter, born June 18, 1977, and to pay the attorneys fees incurred by petitioner in this proceeding.
The parties were married on October 23, 1975. They separated in April, 1978 at which time petitioner and the child moved into a nearby apartment. Petitioner filed for divorce on the ground of incompatibility on November 15, 1978. She also moved for interim relief; namely, temporary alimony, attorneys fees, child support and custody of the parties 10-month-old daughter. Respondent’s answer included a prayer for custody of the child.
These matters were scheduled for hearing on December 5, 1978. However, at a pre-hearing conference that day the parties worked out an informal agreement and on December 27, 1978 the attorneys submitted to the Court a formal stipulation which provided, in part, as follows:
“1. Until further order of this Court, Respondent will pay to the Petitioner for the support of their child, the amount of $75.00 per week.
2. Until further order of this Court, temporary custody of the minor child, Jennifer Lucy H...., is awarded to Petitioner.
3. Until further order of the Court, Respondent will have unsupervised visita *512 tion with the child at such times and such length as is mutually agreed upon by the parties.
4. Jennifer Lucy H.... will not be removed from the State of Delaware without further order of the Court and both parties are hereby restrained from doing so.
5. Both parties agree that in the event of the child’s removal from this State in violation of this Order, such violation shall automatically permit the Court to assign all title, right and interest the violator may have had to all property the parties now own . unto the non-violating party . . .”
The Court entered its order on the stipulation by signing at its foot under the words “SO ORDERED THIS 27th day of December, 1978.”
Petitioner was born in January 1948 in Norway, is a citizen of Norway and lived there before her marriage to respondent. She possessed a Norwegian passport covering herself and her child. Respondent was bom in the United States in September 1939. Prior to the divorce, respondent had taken petitioner’s passport and had refused to return it to her. On January 19, 1979, respondent’s attorney mailed the passport to the Court with a letter stating that it was respondent’s position that the passport should be kept by the Court and not released to petitioner without a prior hearing. Petitioner’s attorney wrote to the Court on January 24, 1979 requesting that the Court turn the passport over to petitioner contending that paragraph 4 of the December 27 stipulation and order, providing that the child will not be removed from the state without further order of the Court and restraining both parties from doing so, negated respondent’s claim of a right to retain petitioner’s passport. On January 31, 1979, the Court conferred with the attorneys for the parties regarding possession of the passport. It was respondent’s position that the Court should retain possession of the passport because he feared that the petitioner might ignore the stipulation and order and return to Norway with the child and thus deprive respondent of his day in Court regarding visitation with his child. Although the Court was sympathetic with respondent’s concerns, it concluded it had no valid basis at that time for retaining the passport and delivered it to petitioner’s attorney, cautioning petitioner’s attorney, however, that petitioner is subject to being found in contempt if she should remove the child from Delaware without first obtaining the Court’s permission.
At the January 31 conference, the Court entered an order, with respondent’s consent, dismissing his previously filed application for custody of the child.
On or about February 7, 1979, petitioner, without first obtaining or attempting to obtain this Court’s permission, left Delaware and returned to Norway with the child, in violation of paragraph 4 of the stipulation and order of December 27, 1978. Soon thereafter, respondent moved to terminate his obligation to pay child support under paragraph 1 of the stipulation, and to have transferred to him, in accordance with paragraph 5, petitioner’s right, title and interest in and to the marital property. A hearing was held on that motion on March 7,1979 at the conclusion of which the Court entered the following order, in relevant part:
“1. In view of Mrs. H . . .’s violation of the Court’s order Mr. H . is to pay into escrow account held by Mr. Benson, his attorney, child Support for six weeks. After those payments are made the Support order is held in abeyance. If three months from this date no action is taken by Mrs. H ... to return to the jurisdiction and subject herself to the Court’s orders, the money in the escrow account is to be returned to Mr. H . and the Support order is not to be reinstated except upon further application.
“2. That all the right, title and interest the Petition has to all property the parties now own ... be transferred to the Respondent, Carl H . . .”
*513 On May 21, 1979, petitioner’s attorney advised the Court and respondent’s attorney by letter that he had received a message from petitioner “that she will be in the United States, possibly on business, on June 4, and has made arrangements to make a trip to Delaware on that date.” He requested that a hearing be held on June 4 on the issue of child support. Over respondent’s objection, the Court ruled that petitioner’s attorney’s letter of May 21 was an application by petitioner under paragraph 1 of the March 7 order for reinstatement of child support. A hearing was held on June 4 at which petitioner, but not respondent, was present and testified. The attorneys for both parties were present. Petitioner testified that she is living in Oslo, Norway, with her child and mother in her mother’s house; that her mother became ill and needed surgery while visiting in Delaware to help petitioner during her difficulties; that her mother wanted the surgery done in Norway, could not travel alone and needed post-surgical care; that her mother’s condition was the primary reason petitioner left Delaware and went to Norway in February with her child and mother; that her mother has a heart condition and is receiving $350 a month as sick pay; that petitioner is employed in Norway at a net monthly income of $800; that she returned to the United States without her child for a short time on company business; that while living with her mother she pays all the household expenses which she claims are less than what it would cost her to rent an apartment of her own; that the cost of living in Norway is three times that of the United States; and that her expenses per month total approximately $830. No decision was made on petitioner’s application for child support at that time since the Court would be hearing testimony at a later date from respondent. The hearing on the application to require respondent to pay petitioner’s attorneys fees was also deferred.
At the request of petitioner’s attorney, the Court also heard petitioner’s testimony on her then uncontested petition for divorce on the ground of incompatibility. After hearing petitioner’s testimony in support of her divorce petition, the Court stated that a decree of divorce will be entered, but not until the Court is advised by respondent’s attorney that petitioner has signed the documents transferring her right, title and interest in and to the parties’ property in accordance with the Court’s March 7 order.
The continued hearing on petitioner’s applications for child support and attorneys fees was held on August 6, 1979 at which respondent testified as to his employment, income and financial condition.
Respondent opposed the entry of an order reinstating at this time his child support obligation because petitioner’s residence with the child in Norway had and will continue to deprive him and the child of their mutual visitation rights in violation of paragraphs 3 and 4 of the parties stipulation and the Court’s order of December 27,1978. He urged that economic pressure should be applied by the Court to coerce compliance by petitioner with the December 27 stipulation and order.
It is not disputed that petitioner’s removal of the child from Delaware without the Court’s prior order violated paragraph 4 of the stipulation and order of December 27. Paragraph 5 of the stipulation and order provides a specific sanction or penalty for such violation; namely, that the Court may assign to the non-violating parent the violating parent’s interest in the parties’ marital property. Because of petitioner’s violation, she was found in contempt and this Court ordered the transfer to respondent of petitioner’s interest in the parties’ marital property.
Section 501(a)[1] of Title 13 of the Delaware Code makes it the duty of both parents to support their minor children. Section 501(a), however, does not provide how the burden of support is to be shared by two parents when they are in disagreement. *514 When one of the parents applies to the Court to enforce the other parent’s duty of support of their minor child, as permitted by 13 Del.C. § 511, the Court’s determination of the amount of support to be ordered is governed by 13 Del.C. § 514.[2]
Respondent’s primary position in opposition to the petition to reinstate support payments is that petitioner’s violation of paragraph 4 of the December 27 stipulation and order and her continued violation by her residence with the child in Norway are “general equities inherent in the situation” which, in accordance with § 514(3) should cause the Court to decline to order him to contribute to the support of his child until such time as the mother resumes residence with the child in Delaware.
Without deciding whether petitioner’s violation was excusable or inexcusable, but assuming for this purpose that it was inexcusable, the December 27 stipulation and order provided a specific penalty for such a violation. That penalty, forfeiture of the violating parent’s interest in the parties’ marital property, has already been exacted from petitioner on respondent’s application. The stipulation and order entitled respondent to no more than that. To now relieve respondent of his duty to support his child would impose an additional penalty which was not provided for in the stipulation and order and would be inequitable. Accordingly, the Court holds that petitioner’s violation of the stipulation and order is not, per se, a reason either for denying petitioner’s child support application in toto or for reducing the amount of support that petitioner should be required to pay.
Respondent then contends that, apart from the violation, petitioner’s moving with the child to Norway and her apparent intention to continue to reside there have and will continue to deprive him and the child of the liberal visitation rights contemplated by the stipulation and order. Respondent argues that the “general equities inherent in the situation” whereby he is effectively denied visitation should persuade the Court to deny petitioner’s child support application in order to apply economic pressure upon petitioner to coerce her to return with the child to Delaware. To adopt that contention would require the Court to hold that a parent’s visitation rights or privileges with his child and that parent’s duty to support his child are mutually dependent in the sense that a parent has no duty to support a child whom he does not have a right or privilege to visit. Respondent has cited some non-Delaware cases which support this mutuality theory. However, while the Court recognizes and acknowledges the great importance of visitation by a non-custodial parent to both that parent and the child, and, assuming, without holding, that there may be situations in which it would be equitable or proper to apply a mutuality theory to a non-custodial parent’s duty to support his child, the Court concludes that it would not equitable or proper to do so in this case for a number of reasons.
First, the residence of petitioner and the child have not been kept secret from respondent. There is no evidence that respondent has attempted to visit his child in Norway but has been interfered with or prevented from so doing by petitioner. Thus, unlike the situation in some of the cases which espouse a mutuality theory, while the child’s continued residence in Norway prejudicially and materially affects the frequency, convenience and expense of respondent’s right or privilege to visit with his child, the right or privilege itself has not been denied to him by petitioner.
*515 Second, except as the parents have agreed otherwise at the time of the custody decree, the custodial parent is authorized by 18 Del.C. § 728 to “determine the child’s upbringing, including his . place of residence ., unless the Court after hearing finds, upon motion by the noncustodial parent, that a specific limitation of the custodian’s authority would be in the best interests of the child.” The December 27 stipulation and order was neither an agreement by the parties that petitioner would continue to reside with the child in Delaware nor a determination by the Court that it is not in the best interests of the child to reside in Norway with her mother. Indeed, respondent’s argument in this regard comes down to this: the inhibition to visitation that results from the child living at great distance from the noncustodial parent causes, per se, such a residence to become one that is not in the best interests of the child. The Court cannot accept that argument. Visitation, while highly important to the child and noncustodial parent, must be balanced against the custodial parent’s rights and responsibilities; and all relevant factors, of which the noncustodial parent’s visitation is only one, must be weighed in determining a child’s best interests.
Respondent agreed that custody of the child should be granted to petitioner despite the fact he knew that petitioner was a Norwegian citizen with strong family ties to her home country. Although the Court does not in any way condone her violation of its order by removing the child from Delaware without a prior order permitting her to do so, it does not follow that residence in Norway is inimical to the child’s best interests. It is not unnatural or unexpected for a mother, under all the circumstances in this case, to conclude that it is in the best interests of her child to be raised in the mother’s home town. The fact that the custodial parent’s home city is Oslo, Norway, or some other place distant from the noncustodial parent’s residence, of course creates difficulties with regard to the expense and frequency of the exercise by the noncustodial parent of his visitation privileges, but, in and of itself, it does not change the custodial parent’s right to choose as the child’s residence that place which the custodial parent decides is the best environment in which to raise the child.
Finally, respondent’s position is not supported by any Delaware decision of which the Court is aware and is inconsistent with the reported Delaware decision that is most nearly in point. Respondent urges the applicability of Heinsohn v. Chandler, Del.Ch., 2 A.2d 120 (1938), in which the Delaware Court of Chancery declined to grant to a mother against a father specific performance of the support provisions of a contract which the parties had entered into at the time of their separation. The contract provided for payments by husband of support for the benefit of wife and their children, custody by wife of two children and custody by husband of one child, and visitation rights to both parties. Wife remarried and, without telling her first husband, moved from Delaware to Cleveland, Ohio, where her new husband lived, and took with her the two children whose custody she had. She concealed from her first husband her and the children’s whereabouts for seven months. There was no applicable statute at that time and the case was decided on the basis of equity law applicable to suits for specific performance. The Court held that plaintiff had deliberately kept defendant in the dark regarding her remarriage and her and the children’s whereabouts, that plaintiff had thereby breached the contract insofar as it related to defendant’s right to see the children and so had disqualified herself from complaining against defendant’s breach, and that defendant’s contractual obligation to provide support would not be specifically enforced for the period plaintiff’s conduct deprived defendant of this contract right to see the children. The Chancellor’s quotation from the decision of the Court of Appeals of New York in Duryea v. Bliven, 25 N.E. 908, makes clear that Heinsohn holds no more than that in a suit for specific performance of a contract “no recovery could be had for her (the *516 wife’s) benefit, while she was refusing to perform on her part.” Heinsohn is clearly distinguishable, not only because there, unlike here, the payments defendant had agreed to make were for the benefit of the wife as well as for the children, but also because here petitioner did not attempt to conceal from respondent her whereabouts.
Shaw v. Shaw, Del.Ch., 9 A.2d 258 (1939), was decided after Heinsohn and is the Delaware case that more nearly resembles the case sub judice. Shaw, like Heinsohn, was a suit by a mother against the father (husband and wife) for specific performance of a support provision contained in a contract between the parties. However, unlike Heinsohn, the contract in Shaw stated that the payments to be made by defendant “are solely for the education, maintenance and support of the infant children” of the parties and it made no provision for the benefit of plaintiff. The contract gave custody to plaintiff and specific visitation rights to defendant. Plaintiff denied defendant his visitation rights under the contract, defendant discontinued support payments and plaintiff sued for specific performance of defendant’s support covenant. The Court held that defendant’s performance of his contractual obligation to make monthly payments for the support of his children was not conditional on plaintiff’s performance of her covenant to afford defendant visitation rights with the children on the occasions specified in the contract and ordered defendant to make the agreed payments for the support of his children. The Court distinguished Heinsohn by pointing out that there the payments which defendant had agreed to make were for the benefit of the wife, as well as for the children.
The Court of Chancery cases thus draw a distinction between the case where the withholding of relief to the custodial parent because of the custodian’s interference with the non-custodian’s visitation directly affects the violating custodian and the case where the withholding of relief would impact primarily and directly on the child through the deprivation of child support.
In the case at bar, there was a penalty— forfeiture of all interest in the parties’ marital property — agreed upon by both parties, which was imposed upon petitioner as a direct result of her violation of the stipulation and order. Thus, consistent with the rationale of Heinsohn, this Court, on respondent’s application, has imposed an economic sanction against the violator. To deprive the child of support from her father would result in directly and primarily penalizing the child, contrary to the holding in Shaw.
For the reasons hereinabove stated, the Court concludes that petitioner’s violation of the December 27 stipulation and order and her continued residence with the child in Norway are not “general equities inherent in the situation” which should cause the Court to deny petitioner’s application for an order requiring respondent to contribute to the support of his child.
The parties agreed in their December 27 stipulation that respondent would pay $75 per week for the support of the child until further order of the Court. The Court is now required to determine the amount that respondent should pay and 13 Del.C. § 514, hereinabove quoted, specifies the factors which, among others, the Court must consider. The Court will usually accord great weight to what the parties themselves have agreed to, but only if the circumstances in which their agreement was made have not changed materially. Here the circumstances have changed materially in several important respects. Petitioner is now employed and lives with her child in her mother’s house in Norway. Therefore, no weight will be given to respondent’s December 1978 agreement to pay $75 per week, except to evidence an apparent ability and his willingness then to pay that amount for the support of his child.
The Court has determined, after considering the factors specified in 13 Del.C. § 511 and by application of the Mel-son Formula, that respondent will be ordered to pay $45 per week to petitioner for the support of the child. This amount will assure proper support for the child and still *517 permit respondent to retain sufficient income to visit the child on a number of occasions each year.[3] The support order is retroactive to June 1, 1979 at the rate of $45 per week. Four hundred fifty ($450) dollars has accumulated in the escrow account that was required by the Court’s order March 7, 1979, and respondent shall turn this amount over to petitioner plus an additional $275 for the accumulated arrear-ages. (15 weeks X $45 = $675)
Respondent has objected to the application for an order requiring him to pay the attorneys fees incurred by petitioner in this divorce action, including the fees incurred in connection with the child custody, visitation and support matters. The basis of the objection is that much of the services of petitioner’s attorney was attributable to petitioner’s violation of paragraph 4 of the December 27 stipulation and order and would not have been necessary if petitioner had obtained the Court’s permission prior to her removal of the child from Delaware. Petitioner has incurred a liability for legal services rendered on her behalf in these proceedings during the period November 9, 1978 through February 6, 1979. After payment of a retainer by petitioner, the balance due is $565.50. Presumably there will be additional legal expenses for services rendered subsequent to that date. This Court is authorized by 13 Del.C. §§ 513(4), 731 and 1515 to order a party, from time to time and after considering the financial resources of both parties to pay all or part of the cost to the other party of maintaining or defending a support, visitation, custody or divorce proceeding, including the attorneys fees incurred prior to the commencement of the proceeding or after the entry of a final judgment, and the Court may order the amount to be paid directly to the party’s attorney. The Court finds that the services rendered by petitioner’s attorney were necessary; that the fee is reasonable; that the services that petitioner’s attorney would have been required to render had petitioner sought an order of the Court before leaving Delaware would not have been substantially less than the services he rendered because his client left Delaware without a prior order; and that, even if the necessary legal services would have been substantially less had petitioner obtained such order before leaving or had she not left Delaware with the child, that fact does not disqualify petitioner from obtaining an order requiring respondent to pay her legal expenses, in whole or in part. Accordingly, having considered the financial resources of the parties, respondent is hereby ordered to pay directly to petitioner’s attorney of record in this action $300 for the services rendered by such attorney in connection with these proceedings. Such payment shall be made within sixty (60) days of this order.
IT IS SO ORDERED.

*518

*519

. “The duty to support a child under the age of 18 years, whether born in or out of wedlock, rests primarily upon his parents.”

. “In determining the amount of support due to one to whom the duty of support has been found to be owing, the Court, among other things, shall consider:
(1)The health, relative economic condition, financial circumstance, income, including the wages, and earning capacity of the parties, including the children;
(2) The manner of living to which the parties have been accustomed when they were living under the same roof;
(3) The general equities inherent in the situation.”

. The round-trip economy air fare from Philadelphia to Oslo, Norway is approximately $400.