Joanne ROSA, Department of Child
Support Enforcement (DCSE),
Petitioners,

v.

Jose FALCON, Respondent.

No. C–8825.

Family Court of Delaware,
New Castle County.

Submitted: Jan. 17, 1990.
Decided: Jan. 25, 1990.

David W. Lynch, Deputy Atty. Gen., Wilmington, for petitioners.

Joel D. Tenenbaum, Wilmington, for respondent.

## OPINION

GALLAGHER, Judge.

On July 27, 1978 this Court approved a consent order, wherein Jose Falcon (hereinafter "father") agreed to pay $30 per week in child support to Joanne Rosa (hereinafter "mother"), formerly Joanne Nordstrum. On April 14, 1988, mother filed a petition for an increase in the amount of court-ordered support and for payment of support arrears. The petition was heard before a master, and on September 12, 1988, the master found that father was in contempt of the consent order and recommended that father pay the full amount of arrears owed, in installments, in addition to current support.

Father petitioned for a review de novo of mother's petitions, following the findings and recommendations of the master. At the hearing on the review de novo on January 17, 1990, the parties were in agreement as to the amount of current support calculated under the *Melson* Formula. However, the parties were in dispute as to the issue of arrears. Father does not deny that he failed to pay child support during the specified time; in fact the parties have stipulated to a Department of Child Support Enforcement ("DCSE") audit, indicating what payments have and have not been made by father. Father's contention is that mother should not be entitled to child support arrears, because she concealed the whereabouts of the child from him during the period in which he failed to make support payments, using the Family Court case of *Sears v. Sears*, Del.Fam., 462 A.2d 1099 (1983), as a defense.

Mother responded to father's allegation of concealment by arguing: 1) the *Sears* defense is inapplicable because father made payments to DCSE, not directly to mother, and 2) mother's actions did not amount to a concealment within the contemplation of the *Sears* defense.

I find that mother's actions did not rise to the level of concealment which would trigger the *Sears* defense, based on the evidence before me.

## I.

When the child was born in 1972, mother was living at her mother's home at 314 Parkside Boulevard in Claymont, Delaware under the name of Nordstrum. Father had visited that home, and the phone number there had been listed in the telephone directory under the name of Joanne Nordstrum. Mother lived at the Parkside Boulevard address until some time in 1975, at which time she moved to 1810 West Street in Wilmington. Father knew that mother had moved to an apartment at this address, but did not know which one. He did go by the apartment building once and spoke to one person at the door of one of the apartments. There were approximately three apartments in the building. Father made no further attempt to see the child at this address after this one visit. Mother's phone number was listed under her own name, Joanne Nordstrum, at the 1810 West Street address for about one year.

In 1976, mother married Angel Rosa and changed her last name to Rosa. Her phone number did not change, but the listing was changed from Nordstrum to Rosa. At some point, father learned that mother had remarried and changed her name to Rosa.

In 1977, mother moved to 26 N. Rodney Street in Wilmington. Her phone number was listed under Rosa at this address, and had not changed from the phone number when she was living at the West Street address. In 1979, mother took steps to change the child's name from Falcon to Rosa. Father was sent notice of the name change request and appeared in Court for the hearing. The name change was published in the Wilmington News Journal.

In 1981, mother moved to 22 Hillside Road in Claymont. Father had been to the house at 22 Hillside Road years earlier to do some work for the then-owner John Lowry. Mr. Lowry is now mother's stepfather and at the time father was at the house, Mr. Lowry was a friend of mother's family. Father never attempted to contact Mr. Lowry concerning mother's whereabouts.

Mother never notified father of her moves. Mother did notify the Family Court of her new addresses in 1975 and 1977, but not in 1981. Mother did file change of address forms with the post office for each move.

Father tried on a few occasions to get mother's address from the Bureau of Child Support Enforcement on Church Street but was unsuccessful. He tried to call mother's mother on a couple of occasions in 1973 and 1974, but was unsuccessful. He did not try again. From 1974 through 1975, father did not inquire of anyone about mother's location. The parties did not have friends in common. Father never tried to locate the child through Wilmington or Claymont schools. He claims he did not know what name to look under, although he knew that mother changed the child's name to Rosa.

Father tried to file for visitation and a decrease in support on a few occasions from 1981 to 1985, unsuccessfully. Father went to this Court on at least a couple occasions, for visitation and decrease in support, but mother did not appear. Mother claims she did not receive notice of these proceedings.

In 1987, mother called father after reading his name in a newspaper article. Mother found father's phone number in the directory. Child support was not discussed. Father requested visitation with the child and mother said that "she would get back with him". She never did. During this phone conversation, mother told father that she was working at "Arnold's Restaurant" in Claymont. Father was unclear as to whether she said "Arnold's", "Arnie's" or "Ernie's", and decided "not to bother" to

look for it. Mother did not give father her phone number or address at this time.

Mother called father when she heard that he had won the Delaware Lottery. Mother petitioned for an increase in child support and payment of support arrears. A paternity test was conducted, at which time father saw the child. Paternity was established. The parties went to mediation in 1989, at which time father obtained mother's phone number.

Mother contends that it was father who stopped visiting the child when mother was living at 1810 West Street. Father argues that he wanted to visit the child, but could not locate mother.

■ Based on the testimony adduced at the hearing, I find that mother's actions, while not promoting visitation, did not amount to an intentional concealment of the child from father. Mother's phone number was listed under Nordstrum, the name father knew her by, until she married Angel Rosa in 1976. It is natural, and even expected, that a woman normally changes her name upon marriage. Mother did not change the child's name until 1979, at which time father was given notice and attended the Court hearing. Mother did not change her phone number until she moved to 22 Hillside Road. Mother never left New Castle County, and the child always attended schools in the Claymont area. Mother did not have her phone number listed in her name for the last few years, initially because she moved into her stepfather's home and did not change the listing from his name. She and her family received some "funny" phone calls and they decided to keep the number unlisted. All of the above actions are consistent with those of any person living their normal day to day existence.

■ Mother may not have encouraged the child to have visitation with father. As far as she was concerned father had voluntarily stopped visiting the child and her husband had assumed father's role. She did nothing to promote visitation and perhaps even hindered it to some degree. But mother does not have an affirmative duty to encourage visitation in order to receive child support. *Shaw v. Shaw*, Del.Ch., 9 A.2d 258, 259–60 (1930); see *Schmidt v. Schmidt*, 313 Pa.Super. 83, 459 A.2d 421, 423 (1983). Unlike *Sears*, mother did not have to inform father of her whereabouts in order to receive support payments, as all payments were made to DCSE. Father, on the other hand, is asserting concealment of the child, known as the *Sears* defense, as an affirmative defense, and thus has the burden of showing that mother concealed the child's whereabouts by a preponderance of the evidence. Father has not met that burden. I find, based on father's testimony, that he did not make a sufficient effort to locate the child within the contemplation of the *Sears* defense. In fact, I find that his efforts to see his child were half-hearted and ineffectual.

Mother testified that father, of his own volition ceased visitations with the child. Father testified that he went by the address of the apartment building located at 1810 West Street once when mother lived there and after asking one tenant on one occasion whether mother lived there, he never went back again. Father called mother's mother, Mrs. Nordstrum, a couple of times in 1973 and 1974, but after failing to reach mother, never called again. Father made no attempts to find the child from 1975 through 1979. In 1979, father attended the child's name change hearing but did not take advantage of the opportunity to obtain mother's address, which incidently appeared on the certified mail green card, signed by husband upon his receipt of notice of the name change proceedings. From 1981 through 1985, father tried on a few occasions to learn mother's address through either Family Court or the Bureau of Child Support Enforcement or both. However, he did not take any other steps towards locating either mother or child during this time period. He did not bother checking with the schools, because he thought the child could have been registered under either the name of Rosa or Falcon and he did not want to make the extra effort. In 1987, when mother told father she worked in "Arnold's" in Claymont father did not try to find the restau-

rant although he was in Claymont often, because as he testified, "he did not want to waste his time". This testimony essentially sums up what has been father's attitude over the past seventeen years, and the Court will not relieve him of his support arrears obligation based on these circumstances.

## II.

■ Even if it were assumed, *arguendo*, that I were to find that mother did conceal the child, the *Sears* defense would still not be applicable to the case at bar.

In *Sears v. Sears*, the Family Court held that "concealment of the whereabouts of the child by the parent entitled to receive support excuses the other parent from the obligation of paying such support during the time of concealment." 462 A.2d at 1101. In reaching that decision, the Court distinguished the concealment situation from a situation where one parent denies the other visitation or where one parent removes the child to a known distant place, where visitation would be difficult or impossible. *Id.* The Court explained that where the parent obliged to pay support has no idea where the child is, there is no way for the parent to provide the child with support, and therefore the custodial parent who knowingly cuts off the support, must of necessity assume the entire support obligation for as long as the child is concealed. *Id.* at 1100–01.

Thus, the Court did not deviate in *Sears* from its earlier position that the obligation to pay child support and the right to child visitation are not interdependent. See *Lucy K.H. v. Carl W.H.*, Del.Fam., 415 A.2d 510 (1979) (child support obligation continued when custodial parent removed child to Norway, in violation of Court order). Rather, the *Sears* court focused on the inability of the support obligor to make support payments when he did not know where to make these payments. 462 A.2d at 1101. "Equity and good conscience prevent this Court from requiring father to reimburse mother for support payments which she chose not to receive during the period of concealment." *Id.*

The case at bar can be distinguished from *Sears*, in that father was required to make payments to DCSE rather than directly to mother. Thus, even if the Court were to find that mother concealed the whereabouts of the child, father would not be excused from making support payments as he was not prevented from paying support to DCSE.

## III.

For the reasons set forth above, I find that father is not relieved from his obligation to pay child support arrears since mother did not conceal the child's whereabouts from father. Father was not obliged to make payments directly to mother, but was to make them to DCSE, thus making knowledge of mother's location unnecessary so far as the support obligation is concerned. It would be unfair to deprive the child of accumulated child support money on the present record.

Husband is liable to wife and DCSE for unpaid child support, in the amount indicated by the audit submitted by DCSE, to which the parties have stipulated.

SO ORDERED.