## HARRIS *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 14.   Argued October 16, 1950.—Decided November 27, 1950.

*Irwin N. Wilpon* argued the cause and filed a brief for petitioner.

*Lee A. Jackson* argued the cause for respondent.   With him on the brief were *Solicitor General Perlman, Assistant Attorney General Caudle, Ellis N. Slack* and *I. Henry Kutz.*

Mr. Justice Douglas delivered the opinion of the Court.

The federal estate tax and the federal gift tax, as held in a line of cases ending with *Commissioner* v. *Wemyss*, 324 U. S. 303, and *Merrill* v. *Fahs*, 324 U. S. 308, are construed *in pari materia,* since the purpose of the gift tax is to complement the estate tax by preventing tax-free depletion of the transferor's estate during his lifetime. Both the gift tax [1] and the estate tax [2] exclude transfers

---

[1] Section 1002 of 26 U. S. C. (1946 ed.) provides: "Where property is transferred for less than *an adequate and full consideration in money or money's worth,* then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this chapter, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year." (Italics added.)

[2] Section 812 of 26 U. S. C. (1946 ed.) provides: "For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—. . . (b) *Expenses, losses, indebtedness, and taxes.* Such amounts—. . . (3) for claims against the estate, (4) for unpaid mortgages upon, or any indebtedness in respect to, property where the value of decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate, . . . as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered, but not including any income taxes upon income received after the death of the decedent, or property taxes not accrued before his death, or any estate, succession, legacy, or inheritance taxes. The deduction herein allowed in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, *when founded upon a promise or agreement,* be limited to the extent that they were contracted bona fide and *for an adequate and full consideration in money or money's worth* . . . . For the purposes of this subchapter, *a relinquishment* or promised relinquishment of dower, curtesy, or of a statutory estate created in lieu of dower or curtesy, or *of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration 'in money or money's worth.'* " (Italics added.)

made for "an adequate and full consideration in money or money's worth." In the estate tax this requirement is limited to deductions for claims based upon "a promise or agreement";[3] but the consideration for the "promise or agreement" may not be the release of marital rights in the decedent's property.[4] In the *Wemyss* and *Merrill* cases the question was whether the gift tax was applicable to premarital property settlements. If the standards of the estate tax were to be applied *ex proprio vigore* in gift tax cases, those transfers would be taxable because there was a "promise or agreement" touching marital rights in property. We sustained the tax, thus giving "adequate and full consideration in money or money's worth" the same meaning under both statutes insofar as premarital property settlements or agreements are concerned.

The present case raises the question whether *Wemyss* and *Merrill* require the imposition of the gift tax in the type of post-nuptial settlement of property rights involved here.

Petitioner divorced her husband, Reginald Wright, in Nevada in 1943. Both she and her husband had substantial property interests. They reached an understanding as respects the unscrambling of those interests, the settlement of all litigated claims to the separate properties, the assumption of obligations, and the transfer of properties.

Wright received from petitioner the creation of a trust for his lifetime of the income from her remainder interest in a then-existing trust; an assumption by her of an indebtedness of his of $47,650; and her promise to pay him $416.66 a month for ten years.

Petitioner received from Wright 21/90 of certain real property in controversy; a discontinuance of a partition

---

[3] See § 812 (b) *supra*, note 2.

[4] *Ibid.*

suit then pending; an indemnification from and assumption by him of all liability on a bond and mortage on certain real property in London, England; and an indemnification against liability in connection with certain real property in the agreement. It was found that the value of the property transferred to Wright exceeded that received by petitioner by $107,150. The Commissioner assessed a gift tax on the theory that any rights which Wright might have given up by entering into the agreement could not be adequate and full consideration.

If the parties had without more gone ahead and voluntarily unravelled their business interests on the basis of this compromise, there would be no question that the gift tax would be payable. For there would have been a "promise or agreement" that effected a relinquishment of marital rights in property. It therefore would fall under the ban of the provision of the estate tax [5] which by judicial construction has been incorporated into the gift tax statute.

But the parties did not simply undertake a voluntary contractual division of their property interests. They were faced with the fact that Nevada law not only authorized but instructed the divorce court to decree a just and equitable disposition of both the community and the separate property of the parties.[6] The agreement recited that it was executed in order to effect a settlement of the respective property rights of the parties "in the event a divorce

---

[5] See § 812 (b) *supra,* note 2.

[6] At the time of the divorce Nevada Compiled Laws (Supp. 1931–1941) § 9463 provided: "In granting a divorce, the court may award such alimony to the wife and shall make such disposition of the community and separate property of the parties as shall appear just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens, if any, imposed upon it for the benefit of the children. . . ."

should be decreed"; and it provided that the agreement should be submitted to the divorce court "for its approval." It went on to say, "It is of the essence of this agreement that the settlement herein provided for shall not become operative in any manner nor shall any of the Recitals or covenants herein become binding upon either party unless a decree of absolute divorce between the parties shall be entered in the pending Nevada action."

If the agreement had stopped there and were in fact submitted to the court, it is clear that the gift tax would not be applicable. That arrangement would not be a "promise or agreement" in the statutory sense. It would be wholly conditional upon the entry of the decree; the divorce court might or might not accept the provisions of the arrangement as the measure of the respective obligations; it might indeed add to or subtract from them. The decree, not the arrangement submitted to the court, would fix the rights and obligations of the parties. That was the theory of *Commissioner* v. *Maresi,* 156 F. 2d 929, and we think it sound.

Even the Commissioner concedes that that result would be correct in case the property settlement was litigated in the divorce action. That was what happened in *Commissioner* v. *Converse,* 163 F. 2d 131, where the divorce court decreed a lump-sum award in lieu of monthly payments provided by the separation agreement. Yet without the decree there would be no enforceable, existing agreement whether the settlement was litigated or unlitigated. Both require the approval of the court before an obligation arises. The happenstance that the divorce court might approve the entire settlement, or modify it in unsubstantial details, or work out material changes seems to us unimportant. In each case it is the decree that creates the rights and the duties; and a decree is not a "promise or agreement" in any sense—popular or statutory.

But the present case is distinguished by reason of a further provision in the undertaking and in the decree. The former provided that "the covenants in this agreement shall survive any decree of divorce which may be entered." And the decree stated "It is ordered that said agreement and said trust agreements forming a part thereof shall survive this decree." The Court of Appeals turned the case on those provisions. It concluded that since there were two sanctions for the payments and transfers—contempt under the divorce decree and execution under the contract—they were founded not only on the decree but upon both the decree and a "promise or agreement." It therefore held the excess of the value of the property which petitioner gave her husband over what he gave her to be taxable as a gift. 178 F. 2d 861.

We, however, think that the gift tax statute is concerned with the source of rights, not with the manner in which rights at some distant time may be enforced. Remedies for enforcement will vary from state to state. It is "the transfer" of the property with which the gift tax statute is concerned,[7] not the sanctions which the law supplies to enforce transfers. If "the transfer" of marital rights in property is effected by the parties, it is pursuant to a "promise or agreement" in the meaning of the statute. If "the transfer" is effected by court decree, no "promise or agreement" of the parties is the operative fact. In no realistic sense is a court decree a

---

[7] Section 1000 of 26 U. S. C. (1946 ed.) provides: "(a) For the calendar year 1940 and each calendar year thereafter a tax, computed as provided in section 1001, shall be imposed upon *the transfer* during such calendar year by any individual, resident or nonresident, of property by gift. . . . (b) The tax shall apply whether *the transfer* is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; but, in the case of a nonresident not a citizen of the United States, shall apply to *a transfer* only if the property is situated within the United States." (Italics added.)

"promise or agreement" between the parties to a litigation. If finer, more legalistic lines are to be drawn, Congress must do it.

If, as we hold, the case is free from any "promise or agreement" concerning marital rights in property, it presents no remaining problems of difficulty. The Treasury Regulations [8] recognize as tax free "a sale, exchange, or other transfer of property made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from any donative intent)." This transaction is not "in the ordinary course of business" in any conventional sense. Few transactions between husband and wife ever would be; and those under the aegis of a divorce court are not. But if two partners on dissolution of the firm entered into a transaction of this character or if chancery did it for them, there would seem to be no doubt that the unscrambling of the business interests would satisfy the spirit of the Regulations. No reason is apparent why husband and wife should be under a heavier handicap absent a statute which brings all marital property settlements under the gift tax.

We are now advised that since submission of the case on October 16, 1950, petitioner has died, and that it will

---

[8] Section 86.8 of Treas. Reg. 108 provides: "Transfers reached by the statute are not confined to those only which, being without a valuable consideration, accord with the common law concept of gifts, but embrace as well sales, exchanges, and other dispositions of property for a consideration in money or money's worth to the extent that the value of the property-transferred by the donor exceeds the value of the consideration given therefor. However, a sale, exchange, or other transfer of property made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from any donative intent), will be considered as made for an adequate and full consideration in money or money's worth. A consideration not reducible to a money value, as love and affection, promise of marriage, etc., is to be wholly disregarded, and the entire value of the property transferred constitutes the amount of the gift."

take some weeks before an administrator of her estate can be appointed. Accordingly we enter our judgment as of October 16, 1950, in pursuance of the practice obtaining in those circumstances. See *Mitchell* v. *Overman*, 103 U. S. 62, 64–65; *McDonald* v. *Maxwell*, 274 U. S. 91, 99.

*Reversed.*

MR. JUSTICE FRANKFURTER, joined by MR. JUSTICE BLACK, MR. JUSTICE BURTON, and MR. JUSTICE MINTON, dissenting.

Section 503 of the Revenue Act of 1932 imposes a gift tax on property "transferred for less than an adequate and full consideration in money or money's worth." 47 Stat. 247, now I. R. C., § 1002, 26 U. S. C. § 1002. In *Merrill* v. *Fahs,* 324 U. S. 308, the Court held that an antenuptial settlement is subject to this tax.[1] Believing as I do that the disposition of the case before us largely depends on the weight given to the considerations which there prevailed, recapitulation of them is appropriate. The Court there based its result on the conclusion that a transfer of property pursuant to an antenuptial settlement was not made in exchange for "an adequate and full consideration in money or money's worth." This conclusion was reinforced by reading into the gift tax provision the gloss of the interrelated estate tax of the same year that the relinquishment of "marital rights . . .

---

[1] The *Merrill* settlement did not involve release of support rights. Nor are they involved in the case before us, for the transfer here sought to be taxed passed to the husband from the wife, who was under no obligation to support him. We are, therefore, not concerned here with the Commissioner's view that "to the extent that the transfers are made in satisfaction of support rights the transfers are held to be for an adequate and full consideration." E. T. 19, 1946–2 Cum. Bull. 166. See 2 Paul, Federal Estate and Gift Taxation, § 16.15. But cf. *Meyer's Estate* v. *Commissioner,* 110 F. 2d 367; *Helvering* v. *United States Trust Co.,* 111 F. 2d 576.

shall not be considered to any extent a consideration 'in money or money's worth.' " Revenue Act of 1932, § 804, 47 Stat. 280, now I. R. C., § 812 (b), 26 U. S. C. § 812 (b).

The case before us concerns not an antenuptial agreement, but what the Tax Court called a "property settlement agreement," contracted in anticipation of divorce. Each spouse transferred property of substantial value to the other and each agreed "to release completely the property of the other from all claims arising out of their marriage." 10 T. C. 741, 743.

Unless we are now to say that a settlement of property in winding up, as it were, a marriage, smacks more of a business arrangement than an antenuptial agreement and therefore satisfies the requirement of "an adequate and full consideration in money or money's worth" which we found wanting in *Merrill* v. *Fahs,* and unless we are further to overrule *Merrill* v. *Fahs* insofar as it joined the gift tax and the estate tax of the Revenue Act of 1932, so as to infuse into the gift tax the explicitness of the estate tax in precluding the surrender of marital rights from being deemed to any extent a consideration "in money or money's worth," we must hold that a settlement of property surrendering marital rights in anticipation of divorce is not made for "an adequate and full consideration in money or money's worth."

The same year that it enacted the gift tax Congress amended the estate tax by adding to the provision that "adequate and full consideration" was prerequisite to deduction of "claims against the estate" the phrase, "when founded upon a promise or agreement." Revenue Act of 1932, § 805, 47 Stat. 280, now I. R. C., § 812 (b), 26 U. S. C. § 812 (b). Legislative history demonstrates that this amendment was intended not to change the law but to make clear that the requirement of consideration did not prevent "deduction of liabilities imposed by law or arising out of torts." H. R. Rep. No. 708, 72d Cong., 1st Sess. 48;

S. Rep. No. 665, 72d Cong., 1st Sess. 51. A similar principle is implicit in the gift tax. By its statutory language and authoritative commentaries thereon Congress did not leave the incidence of the gift tax at large by entrusting its application to the play of subtleties necessary to finding a "donative intent." *Commissioner* v. *Wemyss*, 324 U. S. 303, 306. But while by the gift tax Congress meant "to hit all the protean arrangements which the wit of man can devise that are not business transactions" to the common understanding, *Commissioner* v. *Wemyss, ibid.*, a gift tax is an exaction which does presuppose the voluntary transfer of property and not a transfer in obedience to law. In *Merrill* v. *Fahs, supra,* at 313, we stated that "to interpret the same phrases in the two taxes concerning the same subject matter in different ways where obvious reasons do not compel divergent treatment is to introduce another and needless complexity into this already irksome situation." Application of that principle would require the Court to hold that § 503 of the Revenue Act of 1932, I. R. C., § 1002, imposes a tax on "the amount by which the value of the property [transferred exceeds] the value of the consideration" received only when the transfer is "founded upon a promise or agreement." The taxpayer does not contest applicability of the principle; and in the view we take of the case it may be assumed.[2] Taxpayer contends (1) that the transfers in the situation now before us were or must be deemed to have been for an "adequate and full consideration in money or money's worth," and (2) that the Commissioner imposed a liability which

---

[2] We therefore need not pass on the suggestion of the Government brief that the estate and gift tax provisions should not in this instance be read in *pari materia* because the interpretation of a phrase common to the two statutes is not involved. Nor do we pass on the contention that under both gift and estate taxes liability is imposed on transfers and claims resulting from loss of marital rights even when no promise or agreement is involved.

was not "founded upon a promise or agreement." Her position was sustained by the Tax Court, 10 T. C. 741, but rejected by the Court of Appeals for the Second Circuit. 178 F. 2d 861.

1. I would adhere to the views we expressed in the *Wemyss* and *Merrill* decisions as to the meaning to be given to the requirement of "adequate and full consideration" in the enforcement of the gift tax "in order to narrow the scope of tax exemptions." 324 U. S. at 312. Nor would I depart from the conclusion there reached that the relinquishment of marital rights is not to be deemed "money or money's worth" because that definition in the estate tax of 1932 is by implication to be read into the gift tax passed in the same year.

2. But was the transfer of the property here in controversy "founded upon a promise or agreement"? The answer requires recital of the governing facts of the case.

Taxpayer separated from her husband in August, 1942, and shortly thereafter brought suit in Nevada for divorce. One week prior to entry of the divorce decree, she and her husband entered into an agreement "for the purpose of settling the respective property rights of the parties hereto and of removing the subject matter thereof from the field of litigation." After providing for the transfers of property and the release of claims, the agreement recited,

"This agreement shall be submitted to the court for its approval, but nevertheless the covenants in this agreement shall survive any decree of divorce which may be entered. It is of the essence of this agreement that the settlement herein provided for shall not become operative in any manner nor shall any of the Recitals or covenants herein become binding upon either party unless a decree of absolute divorce between the parties shall be entered in the pending Nevada action. The settlement herein pro-

vided shall become immediately effective and operative in the event of and upon the entry of a decree of divorce between said parties in said pending Nevada action. The parties hereto, however, shall proceed as expeditiously as possible to carry into effect the covenants herein, which it is provided are to be performed by either of the parties prior to the entry of the decree as aforesaid."

After a hearing at which both parties were represented, the court granted the divorce. It found that certain transfers from the wife to the husband were "in discharge of a legal obligation which, because of the marital relationship has been imposed" on her; and concluded that "the agreement and trust agreements forming a part thereof, made and entered into between plaintiff and defendant under date of February 27th, 1943 is entitled to be approved." The divorce decree "approved" the agreement, directed performance of two of its paragraphs, and declared,

"Notwithstanding the approval of said agreement and the trust agreements forming a part thereof by the Court herein, It is ordered that said agreement and said trust agreements forming a part thereof shall survive this decree.

.     .     .     .     .

"It is further ordered, adjudged and decreed that the decree herein entered is absolute and final in all respects and the Court herein divests itself of all power to amend or modify the same in the future without the consent of both of the parties hereto."

The parties executed the provisions of the decree and the agreement, and the Commissioner assessed the tax in question on the amount by which the value of the property transferred by the wife to her husband exceeded the value of the property transferred by him to her.

3. Such being the facts of the case, was the transfer by Cornelia Harris "founded upon a promise or agreement"? The statute does not say founded "solely upon a promise or agreement." The statute does not say that the tax should not fall on "property transferred under the terms of a judgment or decree of the court." Nor is the phrase "founded upon agreement" a technical term having a well-known meaning either in law or in literature. The question is whether the transfer made by the taxpayer to her husband was, within the fair meaning of the language, "founded" upon her agreement with her husband. Did the Nevada judge in decreeing the divorce describe what actually took place here when he said that on the "date of February 27, 1943, the plaintiff and defendant entered into an agreement and trust agreements forming a part thereof, under the terms of which the parties settled all obligations arising out of their marriage"?

The fact that the undertakings defined by this agreement would come into force only on the occurrence of a condition, to wit, the entering of a decree of divorce, is apparently regarded as decisive of taxability. But does this make any real difference? The terms of that decree might be different from the terms of the agreement; but "nevertheless the covenants in this agreement shall survive any decree of divorce which may be entered." If the divorce court had disapproved the agreement and had not decreed the transfer of any property of the wife to her husband, it is difficult to see how transfers which she made, solely because of the compulsion of the agreement, would be effected by court decree and for that reason not subject to tax. The condition on which an agreement comes into force does not supplant the agreement any more than a deed in escrow ceases to be a deed when it comes out of escrow. In the *Wemyss* and *Merrill* cases, would the gifts have been any the less founded upon an agreement if, as a condition to the antenuptial arrangements in those cases,

the consent of the parents of the fiancée had been made a condition of the marriage? Nor can excluding the transfers here involved from the gift tax be made tenable by resting decision on the narrower ground that to the extent the divorce decree "approved" the agreement or embodied its provisions so as to make them enforceable by contempt the transfers were not "founded upon" the agreement within the meaning of the statute.[3] If the taxpayer had been sued by her husband for the sums she was obligated to transfer to him could he not have brought the suit on the contract?[4] Even though a promise for

---

[3] The ground adopted for reversal of the court below is important to the disposition of the case. On the broader ground apparently employed, no gift tax is due. But if the narrower basis be used, it is probable that some liability should be imposed. One of the transfers required by the agreement—the wife's assumption of a $47,650 indebtedness of her husband—was not incorporated into the divorce decree and therefore is presumably enforceable only under the contract. If enforceability under the decree is the criterion, a gift tax is due to the extent this indebtedness is reflected in the amount determined by the Commissioner to represent the value attributable to release of marital rights.

[4] In none of the twelve jurisdictions in which decisions in point have been found has it been held that a suit could not be brought on the contract in ·a situation like that before us. In four States actions may apparently be brought subsequent to divorce on prior separation agreements which are construed to contemplate survival even though the divorce decree directs different payments than the agreement. See *Seuss* v. *Schukat*, 358 Ill. 27, 36, 192 N. E. 668, 672; *Freeman* v. *Sieve*, 323 Mass. 652, 84 N. E. 2d 16; *Goldman* v. *Goldman*, 282 N. Y. 296, 301, 26 N. E. 2d 265, 267; *Holahan* v. *Holahan*, 77 N. Y. S. 2d 339; *Mobley* v. *Mobley*, 221 S. W. 2d 565 (Tex. Civ. App.). In three States such suits may be brought at least where the decree is not inconsistent with the agreement and does not indicate an intention to terminate it. See *Heinsohn* v. *Chandler*, 23 Del. Ch. 114, 2 A. 2d 120; *Coe* v. *Coe*, 71 A. 2d 514 (Maine); *Allen* v. *Allen*, 196 Okla. 36, 162 P. 2d 193. In five others it appears that actions on the contract will lie except when the agreement is recited in the decree so as to be enforceable by contempt; but in none of the

which inadequate consideration was given has been reduced to a judgment, a claim based upon it has been held not deductible from the gross estate and thus must have been deemed to be "founded upon a promise." *Markwell's Estate* v. *Commissioner,* 112 F. 2d 253. If a transfer does not cease to be "founded upon a promise" when the promise is merged into a judgment, is not a transfer pursuant to an agreement which survives a ratifying decree *a fortiori* "founded upon" that agreement?

Judge Learned Hand's treatment of this matter is so hard-headed and convincing that it would be idle to paraphrase his views.

> "In some jurisdictions contracts, made in anticipation of a divorce, are held to persist *ex proprio vigore* after the divorce decree has incorporated their terms, and has added its sanctions to those available in contract. That, for example, is the law of New York, where the contract remains obligatory even after the court has modified the allowances which it originally adopted; and where the promises will be thereafter enforced by execution and the like. Perhaps, that is also the law of Nevada, which the parties provided should govern 'all matters affecting the interpreta-

---

cases refusing to permit a suit on the contract did the decree or the agreement direct survival. See *Hough* v. *Hough,* 26 Cal. 2d 605, 160 P. 2d 15; *McWilliams* v. *McWilliams,* 110 Colo. 173, 132 P. 2d 966; *Hertz* v. *Hertz,* 136 Minn. 188, 161 N. W. 402; *Corbin* v. *Mathews,* 129 N. J. Eq. 549, 19 A. 2d 633; *Mendelson* v. *Mendelson,* 123 Ohio St. 11, 173 N. E. 615. See Lindey, Separation Agreements and Ante-Nuptial Contracts, 389–395; Note, Control of Post-Divorce Level of Support by Prior Agreement, 63 Harv. L. Rev. 337. *Schacht* v. *Schacht,* 295 N. Y. 439, 68 N. E. 2d 433, relied on by petitioner, held only that a determination by the divorce court of the fairness of a separation agreement was *res judicata* in a subsequent suit to set the agreement aside for fraud. The issue does not appear to have been determined in Nevada, where the agreement here involved was made and the divorce entered.

tion of this agreement or the rights of the parties.' Be that as it may, in the case at bar, the Nevada decree having declared that the agreement was 'entitled to be approved,' that included the provision that its 'covenants' should 'survive' as well as any of its other stipulations. Thus the payments made under it were 'founded' as much upon the 'promise or agreement' as upon the decree; indeed, they were 'founded' upon both; the parties chose to submit themselves to two sanctions—contempt under the divorce court and execution under the contract. The payments were therefore subject to the gift tax." 178 F. 2d 861, 865.

I would affirm the judgment.