Daniel S. NATCHEZ and Peter Natchez, Executors of the Estate of Benjamin H. Natchez, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 687, Docket 82–6210.

United States Court of Appeals, Second Circuit.

Argued Jan. 20, 1983.

Decided April 15, 1983.

Janis P. Farrell, Asst. U.S. Atty., New York City (John S. Martin, Jr., U.S. Atty. for the Southern District of New York, David M. Jones, Peter C. Salerno, Asst. U.S. Attys., New York City, of counsel), for defendant-appellant.

Kenneth Simon, New York City (Taylor, Ferencz & Simon, New York City of counsel), for plaintiff-appellee Estate of Benjamin H. Natchez.

Before MANSFIELD and MESKILL, Circuit Judges, and NEAHER,* District Judge.

* Of the United States District Court for the Eastern District of New York, sitting by designa-

MANSFIELD, Circuit Judge:

The United States appeals from a judgment entered in the Southern District of New York, Vincent L. Broderick, *Judge,* in favor of the plaintiffs Daniel Natchez and Peter Natchez, executors of the estate of Benjamin Natchez, on their claim for a refund of federal estate taxes. We affirm.

Benjamin and Gladys Natchez were married in New York in 1939. In February 1970, while residents of New York, they executed a written separation agreement. Paragraph 4 provided that upon execution of the agreement, Benjamin Natchez

> "will give to the wife ... $80,250.00 for her support and maintenance now and in the future and the Wife hereby accepts such payment in exchange for her release [of] all rights to claim alimony and support from the Husband now and in the future."

This paragraph providing for a lump-sum payment in full satisfaction of the right to support would not have been enforceable under New York law in 1970. See New York General Obligations Law § 5–311; *Henderson v. Henderson,* 63 A.D.2d 853, 405 N.Y.S.2d 857 (4th Dept. 1978).

Under paragraph 7 Benjamin further agreed to leave a will

> "providing an outright gift to the Wife if she is living at the Husband's death of one-fourth (¼) of the Husband's adjusted testamentary estate less $60,187.50."

Paragraph 8 provided that if Benjamin performed all the terms of the agreement Gladys would accept its provisions "in lieu of any and all other claims or provisions for her maintenance and support," and in satisfaction of any other claims arising out of the marriage. They released their rights against one another's estate (Par. 10), and provided that the separation agreement was to be incorporated, but not merged, into any divorce decree sought by either party (Par. 13). The agreement did not contain a severability clause.

tion.

The record submitted to the district court contained affidavits by Gladys Natchez, her lawyer, and the lawyer for Benjamin Natchez, each to the effect that the parties intended that in exchange for her rights to support Gladys was to receive two payments: the $80,250 lump sum discussed in paragraph 4 upon the signing of the agreement, and a second amount payable upon Benjamin's death, as specified in paragraph 7. The lawyers for the two parties further attested that but for the two-payment plan Gladys would not have signed the separation agreement.

The Natchezes were granted a divorce by a court in Chihuahua, Mexico in April 1970. The divorce decree approved the terms of the separation agreement and declared that the agreement survived the decree. Under Chihuahua law, the judge in a voluntary divorce proceeding is without power to alter the terms of a separation agreement. Chihuahua Divorce Law Art. 26. However, there is no evidence that the Chihuahua court lacked the basic power to refuse to grant a divorce.

Benjamin Natchez died in September 1975, leaving a will which made no direct reference to the divorce decree entered by the Chihuahua court. The will did, however, direct Benjamin's executors to pay to Gladys the minimum amount necessary to comply with paragraph 7 of the separation agreement. Benjamin's estate paid Gladys $79,285 pursuant to the terms of the will.

On the estate tax return filed by Benjamin Natchez' executors his estate claimed a deduction for the $79,285 paid to Gladys Natchez under the will. The IRS disallowed this deduction on the ground that it was a debt of the decedent not contracted "for full and adequate consideration in money or money's worth" within the meaning of 26 U.S.C. § 2053(c)(1)(A).[1] The estate paid the taxes on the disputed amount and filed a claim with the IRS for a refund, contending in the alternative that Gladys' claim to the $79,285 arose out of the Mexican divorce decree and hence was deductible under IRC § 2053(a)(3)[2] or that the claim was founded on the separation agreement and the agreement was based on full and adequate consideration. The IRS disallowed the claim for a refund and the plaintiffs brought the present action.

In March 1982 the IRS moved for summary judgment on the plaintiffs' claim. The estate did not file a cross-motion for summary judgment although, in a brief filed with the district court, the estate argued that summary judgment should be granted in its favor. In June 1982 Judge Broderick denied the IRS's motion for summary judgment and granted summary judgment in favor of the plaintiffs. Judge Broderick held, as a matter of law, that Gladys Natchez' claim against her late husband's estate was founded on the Mexican divorce decree and that the estate was therefore entitled to deduct its payment to Gladys Natchez as a claim against the estate.

## DISCUSSION

To prevent the use of marital agreements as a device to deplete an estate and avoid taxation the Internal Revenue Code provides that claims against an estate that are "founded on a promise or agreement" will be deductible from the value of the gross estate if they are "contracted bona fide and for an adequate and full consideration in money or money's worth." 26 U.S.C. § 2053(c)(1)(A), note 1, *supra*. Further-

---

1. 26 U.S.C. § 2053(c)(1)(A) provides in pertinent part:

    "*Consideration for claims.*—The deduction allowed by this section in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded on a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth; ..."

2. 26 U.S.C. § 2053(a)(2) provides:

    "EXPENSES, INDEBTEDNESS, AND TAXES
    "(a) *General rule.*—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

    \*    \*    \*    \*    \*    \*

    "(3) for claims against the estate, ...."

more, § 2043(b) of the Code provides that a relinquishment of marital rights in a decedent's estate "shall not be considered to any extent a consideration 'in money or money's worth.'" Section 2043(b) "was aimed at cases involving complicity between the husband and wife who remain married and who are merely attempting to avoid estate tax." *Estate of Glen v. Commissioner,* 45 T.C. 323, 334 (1966); see also *Commissioner v. Estate of Watson,* 216 F.2d 941, 944 (2d Cir.1954).

■ When a claim against an estate by a decedent's former spouse is founded on a divorce decree, however, as opposed to a "promise or agreement," the estate is entitled to deduct the full amount of the claim under § 2053(a)(3). Such claims are deductible even if based on the relinquishment of marital rights, without regard to consideration, for the transfer is deemed an involuntary liability, imposed on the estate not by agreement but by law. *Harris v. Commissioner,* 340 U.S. 106, 110, 71 S.Ct. 181, 183–184, 95 L.Ed. 111 (1950); *id.* at 114, 71 S.Ct. at 185–186 (Frankfurter, J., dissenting). When spouses transfer marital rights pursuant to a divorce and they or their representatives are dealing at arm's length, *id.,* at 112, 71 S.Ct. at 184–185; *Estate of Glen, supra,* 45 T.C. at 334, "[t]he motive of such transfers is certainly not to deplete the estate *inter vivos,* so as to escape ultimate estate taxes upon death." *McMurtry v. Commissioner,* 203 F.2d 659, 662 (1st Cir.1953). Even if the legal effectiveness of the separation agreement is not conditioned on a divorce decree, the claim will be deemed to be founded on the decree and not on the agreement in cases where the divorce court had jurisdiction to alter or modify the agreement. *Commissioner v. Maresi,* 156 F.2d 929, 930–31 (2d Cir.1946).

■ The principal issue on this appeal is whether the former spouse's claim is founded on the divorce decree rather than on the separation agreement when the decree incorporates but does not merge an agreement providing for a relinquishment of marital rights that would without the decree be void and unenforceable. The prevailing doctrine in this Circuit is that if the separation agreement is executed in contemplation of divorce and incorporated in the divorce decree, the payments are not founded on the agreement but on the decree, even if the agreement provides that it survives the decree. *Estate of Watson, supra,* 216 F.2d at 943–44. When the divorce court, however, lacks the power to alter or modify the terms of the separation agreement, some courts have held the agreement to be the "operative fact" that creates the obligation and the "source of the parties' rights." *Estate of Bowers v. Commissioner,* 23 T.C. 911, 922 (1955); see also *Gray v. United States,* 541 F.2d 228, 232 (9th Cir. 1976); *Estate of Fenton v. Commissioner,* 70 T.C. 263, 271 (1978).

■ Here, the Chihuahua court entering the divorce decree had no power under Mexican law to alter or modify the terms of the separation agreement. Moreover, paragraph 4 of the agreement providing for a lump-sum payment in return for the release of a support obligation was under New York law void at the time of the making of the agreement. *Henderson v. Henderson,* 63 A.D.2d 853, 405 N.Y.S.2d 857, 858 (4th Dept. 1978). If there had been no divorce decree Gladys Natchez would have had no enforceable claim against the estate based on the agreement. However, the Chihuahua court, although lacking power to alter or modify the terms of the agreement, possessed the power to approve and adopt those terms as part of its decree. "By that incorporation [of the agreement] the Mexican court determined the validity of the agreement," rendering the agreement valid and fully enforceable under New York law. *Harges v. Harges,* 46 Misc.2d 994, 1002, 261 N.Y.S.2d 713, 721 (Sup.Ct.1965); Cohen, *Separation Agreements and Extraterritorial Divorces,* 22 Bar.Bull. New York County Lawyers' Assn. 174, 179 (1964).

■ Thus the question here is whether Gladys Natchez's claim was founded on the agreement, which standing alone and unincorporated into a divorce decree would be void and not provide valid consideration, or upon the decree, which would be recognized

and enforceable. The government, relying on *Estate of Bowers, supra,* urges us to hold that a claim is founded upon the agreement rather than the decree whenever the divorce court lacks power to formulate and impose its own settlement terms in lieu of those adopted by the parties. We disagree. The essential judicial power for our purposes is the court's power to approve the separation agreement and incorporate it in the decree, which the Chihuahua court possessed. The fact that the court has or lacks the additional power to modify the separation agreement is immaterial in guarding against the abuses contemplated by §§ 2043 and 2053. When spouses enter into a separation agreement in contemplation of divorce that promptly follows, their purpose is not to deplete the husband's estate or avoid taxation, against which §§ 2043(b) and 2053(c)(1)(A) are aimed, but to obtain a divorce decree. Without the prospect of such a divorce decree the parties would not enter into the agreement. Indeed, in conjunction with the separation agreement, Gladys executed a power of attorney authorizing a Mexican lawyer to appear in a Mexican divorce action and confess judgment. As Judge (later Justice) Harlan stated in *Commissioner v. Watson, supra,* 216 F.2d at 945:

> "The fact of divorce and the adoption by the decree of the financial terms agreed on by the parties governing the ending of their marital relationship should be taken, we think, as satisfying the purpose of the statute to ensure against colorable deductions."

■ In *Harris v. Commissioner, supra,* 340 U.S. at 110, 71 S.Ct. at 183–184, the Supreme Court recognized the unimportance for tax deduction purposes of the divorce court's power to modify the terms of the separation agreement:

> "The happenstance that the divorce court might approve the entire settlement, or modify it in unsubstantial details, or work out material changes seems to us unimportant. In each case it is the decree that creates the rights and the duties; and a decree is not a 'promise or agreement' in any sense—popular or statutory."

Accordingly we hold that since the husband and wife here entered into a separation agreement in contemplation of divorce and those terms were then approved by and incorporated in a valid divorce decree, the claim of the decedent's surviving spouse is founded on the decree.

■ The government contends that, although paragraph 4 of the agreement was void, it was severable from the rest of the agreement, leaving in effect paragraph 7 which provided for the testamentary gift, and that paragraph 7 therefore did not need to be validated by the divorce decree in order to be the legally effective foundation of the executors' claim. The government further asserts that the question of severability at least raises an issue of fact, which turns on the intent of the parties. However, the estate introduced uncontroverted affidavits from the Natchezes' lawyers stating that the two-payment plan was an indispensable component of the agreement. Moreover, the agreement lacked a severability clause. On this record, therefore, we are satisfied that there exists no material issue of fact as to the severability of these provisions in the agreement.

■ Even if the provisions were severable, we nevertheless conclude that the agreement was contracted for "full and adequate consideration in money or money's worth" within the meaning of § 2516 of the Code. Section 2516 provides that when a husband and wife execute a written agreement relative to marital rights and are divorced within two years thereafter, as occurred here, "any transfers ... made pursuant to such agreement ... shall be deemed to be transfers made for a full and adequate consideration in money or money's worth."

Although § 2516 appears in the gift tax section of the Code and there is no parallel provision under the estate tax section, § 2516 contains no language limiting its provisions to the gift tax, and we must draw "[n]o inference, implication, or presumption of legislative construction ... by

reason of the location or grouping of any particular section or provision" of the Code. § 7806(b). Moreover, by its terms § 2516 is not limited to inter vivos transfers. Nor does § 2043(b), which refuses to treat the release of marital rights as consideration, mention the release of such rights on divorce. See *Estate of Glen, supra,* 45 T.C. at 334–35.

■ It is true that the Tax Court has recently refused to read § 2516 into the estate tax provisions of the Code. *Estate of Satz v. Commissioner,* 78 T.C. 1172 (1982). However, we disagree with its conclusion in view of the Supreme Court's consistent rulings that the estate tax and gift tax are to be construed *in pari materia. Harris v. Commissioner, supra,* 340 U.S. at 107, 71 S.Ct. at 182; *Merrill v. Fahs,* 324 U.S. 308, 311, 65 S.Ct. 655, 656, 89 L.Ed. 963 (1945); *Estate of Glen, supra,* 45 T.C. at 338. In *Merrill v. Fahs* the Supreme Court held that an inter vivos transfer made in exchange for the release of marital rights lacked consideration and was therefore taxable as a gift. The Court read the estate tax provision regarding consideration into the gift tax section on the theory that "consideration" means the same thing under both sections since treating the relinquishment of marital rights as consideration under the gift tax would lead to avoidance of the estate tax, which the gift tax was designed to prevent. 324 U.S. at 313, 65 S.Ct. at 657. See C. Lowndes, R. Kramer, J. McCord, *Federal Estate and Gift Taxes* § 14.6, at 360 (1974). In *Harris v. Commissioner,* the Court agreed that the estate and gift tax sections were to be construed *in pari materia* "since the purpose of the gift tax is to complement the estate tax by preventing tax-free depletion of the transferor's estate during his lifetime." 340 U.S. at 107, 71 S.Ct. at 182. *Harris,* moreover, relied on *Commissioner v. Maresi, supra,* an estate tax case, to hold that divorce obviates the requirement of consideration for gift tax purposes. *Id.* at 110, 71 S.Ct. at 183–184. Section 2516 was adopted to codify the *Harris* principle "of recognizing the reality of consideration in divorce settlements." *Estate of Glen, supra,* 45 T.C. at

337. We therefore see no reason why § 2516 should not be read *in pari materia* with § 2053(c)(1)(A).

The judgment of the district court is affirmed.