ESTATE OF Herbert R. HERRMANN, Deceased, Edward I. Herrmann and Lawrence A. Herrmann, Co–Executors, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 1090, Docket 95–4113.

United States Court of Appeals, Second Circuit.

Argued Feb. 12, 1996.

Decided June 11, 1996.

---

Frank H. Connelly, Jr. (Margaret M. Fitzpatrick, McGovern, Connelly & Davidson, New Rochelle, NY), for Petitioners.

Tamara Schottenstein, United States Department of Justice, Washington, DC (Loretta C. Argrett, Assistant Attorney General, Gary R. Allen, Richard Farber, on the brief), for Respondent.

Before: MAHONEY, WALKER, and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge:

In a prenuptial agreement, Herbert Herrmann agreed to give his fiancée a life interest in his apartment upon his death, provided that they were still married when he died. In return, the fiancée gave up her rights to any of her future husband's property upon his death or their divorce. They married, and several years later the husband died.

The question is whether the widow's life interest in his apartment is a claim supported by "adequate and full consideration in money or money's worth." I.R.C. § 2053(c)(1)(A). If so, then it is deductible from the husband's taxable estate. If not, it is subject to taxation.

We could quickly dispose of this case by citing several of our opinions dating from 1940, all of which hold that a transfer of property to a spouse in return for a relinquishment of any marital right (for example, support rights, or an elective share in the deceased spouse's estate) is not supported by adequate consideration, and, as such, cannot be deducted. The taxpayer in this case suggests, however, that our decisions have been undercut by several developments since 1940. It contends that post–1940 IRS Revenue Rulings and opinions of the Tax Court and other circuits (which expressly reject our earlier holdings) require us to abandon those precedents.

We do not, however, need to consider the current validity of those precedents to decide this case. For, without relying on them, we still conclude that the property before us should be taxed.

## I. Background

In 1984, Herbert Herrmann (then in his 60's) married Harriet Boris (then in her 50's) in New York. Before the marriage, they signed a prenuptial agreement that provided:

- Separate property of each spouse would remain separate.

- Both waived any claims for alimony, support, and maintenance.

- Both agreed to pool their incomes after marriage, to be held jointly with right of survivorship.

- In case of divorce, Herbert agreed to pay Harriet $5,000 per year for ten years.

- Both waived any claim for any property distribution of any kind (e.g., equitable

distribution of their property upon divorce), except that, if they were still married when Herbert died, Herbert would give Harriet a life interest in his apartment.

- Both waived any right against the "property or estate of the other" including any statutory allowance, personal right of election against a will, or other rights in case of intestacy.

At the time of the agreement, Herbert had about $1,600,000 in assets and $100,000 in annual income; Harriet had $250,000 in assets and an annual income of $25,000.

Herbert died in 1988, and, as the prenuptial agreement had provided, Harriet received the life use of his New York apartment. When Herbert's executors filed the estate tax return, they subtracted the value of Harriet's interest ($264,965) from the assessed value of the apartment ($340,000) as a "claim against the estate," and listed only the estate's reversionary right to the property ($75,035) in his gross estate. The Commissioner of Internal Revenue disallowed the deduction and included the entire value of the apartment in Herbert's gross estate.

The estate filed a petition in the Tax Court challenging the Commissioner's determination. That court, after trying the case on a stipulated set of facts, concluded that Harriet's life interest was not deductible as a claim against the estate because, in the prenuptial agreement, she had not given Herbert "adequate and full consideration in money or money's worth" for the life interest as required by I.R.C. § 2053(c). The court reasoned that Harriet had principally given up her right of statutory election against Herbert's will; that this was a waiver "of dower or curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate"; and that foregoing such an interest can never serve as adequate consideration under I.R.C. § 2043(b).[1] The court

---

1. At common law, "dower" entitled a widow to a life interest in one-third of the land of which her husband had been seised at any time during marriage and which was inheritable by the issue of husband and wife. "Curtesy" entitled a widower to a life estate in all lands so held by his

wife, but only if children were born of the marriage. Jesse Dukeminier & Stanley M. Johanson, Wills, Trusts, and Estates 375–76 (4th ed.1990). By and large, dower and curtesy have been supplanted by laws that entitle a surviving spouse to choose between accepting whatever is provided

further found that even if Harriet had given up other rights that were unlike dower—rights that might provide acceptable consideration—the estate had failed to prove the value of such rights. Since the taxpayer had not met its burden of showing how much of Harriet's life estate was deductible, all of it had to be included. The Tax Court therefore sustained the Commissioner's determination and required the estate to pay about $70,000 in extra taxes.

The taxpayer now asks us to review the Tax Court's decision.

## II. DISCUSSION

▮ We have jurisdiction to re-examine a final decision of the Tax Court pursuant to I.R.C. § 7482. As always, we exercise plenary review over the Tax Court's legal conclusions but disturb its factual findings only for clear error. *Bliss v. Commissioner*, 59 F.3d 374, 378 (2d Cir.1995).

Our inquiry begins with I.R.C. § 2053(a), which provides that, generally, "claims against the estate" are deductible from the gross estate. Section 2053(c)(1)(A), in turn, permits "claims against the estate" only "when founded on a promise or agreement, ... to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth."

In good tax code fashion, there is a further provision, § 2043(b)(1), which tells us that some things do not constitute "consideration in money or money's worth." It states:

(b) MARITAL RIGHTS NOT TREATED AS CONSIDERATION—

(1) IN GENERAL—For purposes of this chapter, a relinquishment or promised relinquishment of dower or curtesy, or of a statutory estate created in lieu of dower or curtesy, *or of other marital rights* in the decedent's property or estate, shall not be

considered to any extent a consideration "in money or money's worth".

(Emphasis added.)

▮ Section 2043(b)(1) was designed to prevent a husband and wife from entering into agreements that use consideration that is valid under state contract law to transform nondeductible marital rights—such as dower—into deductible contractual claims against the estate, thereby depleting the taxable estate. *See Natchez v. United States*, 705 F.2d 671, 674 (2d Cir.1983); *see also* I.R.C. § 2034 (including dower rights in the gross estate).

Normally, of course, a married couple will have no reason to structure bequests to each other as contractual debts. Most transfers between husband and wife qualify for a marital deduction that exempts interspousal transfers from estate and gift taxes. As a result, the decedent's taxable estate does not usually include property transferred to the surviving spouse. I.R.C. § 2056(a). The theory of the marital deduction is that the estate and gift taxes should strike marital property once, on the death of either the decedent or the survivor, but not on both events. *See Estate of Pipe v. Commissioner*, 241 F.2d 210, 214 (2d Cir.), *cert. denied*, 355 U.S. 814, 78 S.Ct. 15, 2 L.Ed.2d 31 (1957).

Consistent with this theory, life estates (and other terminable interests), are not eligible for the marital deduction. I.R.C. § 2056(b).[2] Since life interests end upon the death of the life tenant (the surviving spouse), they typically do not appear in the survivor's estate. If they were eligible for the marital deduction in the estate of the original decedent, the value they represent would escape transfer tax both when the first and when the the surviving spouse die. For example, unless it is included in Herbert's taxable estate, the value of Harriet's life interest in the apartment could well avoid estate tax altogether. It follows that couples have a significant interest in converting non-

---

for the spouse in the decedent's will or taking a statutorily fixed percentage of the estate. *Id.* at 377–78.

**2.** Transfers of "qualified terminable interest property" (QTIP) and certain other terminable

interests are deductible if they meet the requirements specified in I.R.C. § 2056(b). These requirements are designed to guarantee that, although the interest is terminable, it will nonetheless be taxed in the survivor's estate.

deductible life interests into deductible "claims against the estate." The government has a commensurate interest in seeing that this does not happen.

The Tax Court held that the estate failed to prove the value of any consideration valid for purposes of transfer tax that Harriet gave Herbert in exchange for an interest in his apartment. In reaching this conclusion, however, the court did not decide whether Harriet's waiver of her right to an equitable distribution of marital property upon divorce constituted valid or invalid consideration— whether, in other words, it was an "other marital right[ ] in the decedent's property or estate" within the meaning of § 2043(b)(1). Since the estate had, in any event, failed to establish the dollar value of what Harriet had given up, the court declined to reach the § 2043(b)(1) question.

■ We agree with the Tax Court that Harriet's claim against the estate is not deductible for estate tax purposes. In reaching that conclusion, we reject the IRS's invitation that we simply rely on three of our precedents, decided over fifty years ago, for the categorical assertion that a waiver of equitable distribution rights in a prenuptial agreement can never serve as consideration under § 2043(b)(1). Instead, we affirm based on our determination that—whatever the scope of § 2043(b)(1)—the right that Harriet traded away in return for a life interest in her husband's apartment, was not "adequate and full consideration in money or money's worth" under § 2053(c)(1)(A). She waived only a potential right to an equitable distribution in her husband's property, which never, in fact, ripened into an enforceable right. Accordingly, to allow a deduction in this case would be to invite tax avoidance.

### A. *Our 1940 Decisions*

Although we have not had many occasions to interpret § 2043(b)(1), that statute is no stranger to our court. In a trio of cases, all decided in 1940, we interpreted the phrase "other marital rights in the decedent's property or estate" broadly to include all rights that arise from the marital relationship.

In our first encounter with § 2043(b)(1) (then denominated § 804), we were asked to decide whether an ex-wife's waiver, in a separation agreement, of her right to support payments constituted adequate consideration for her ex-husband's promise to make regular payments to her for her life. *Meyer's Estate v. Commissioner*, 110 F.2d 367, 368–69 (2d Cir.), *cert. denied*, 310 U.S. 651, 60 S.Ct. 1103, 84 L.Ed. 1416 (1940). According to I.R.C. § 2034 (then § 811(b)), the decedent's gross estate expressly included *two* categories of a surviving spouse's marital property interests: (1) dower or curtesy and (2) those interests existing "by virtue of a statute creating an estate in lieu of dower or curtesy." Section 2043(b)(1), by contrast, listed *three* categories of rights, the waiver of which could not serve as adequate consideration for a transfer of property away from an estate: (1) dower or curtesy; (2) statutory substitutes for dower and curtesy; and (3) other marital rights in the decedent's property or estate. Apparently finding it significant that § 2043(b)(1)—unlike § 2034—had added the third category of "other marital rights," we held that this third category should be read to encompass not only substitutes for dower and curtesy—that is, marital rights that accrue upon one spouse's death— but *all* rights that arise out of the marital relationship, including those that accrue upon marriage or, later, upon divorce. Because a wife's right to support payments under New York law arose out of her marriage, we held that it was an "other marital right[ ] in the decedent's property or estate" that could not serve as adequate consideration for a claim against the estate. *Id.* at 368–69.

Judge Learned Hand dissented, on the theory that the wife's right to support was not a right to the decedent's "property or estate." As Judge Hand reasoned, the wife relinquished an *in personam* claim against her husband, whereas the tax code spoke only about *in rem* claims against his property. More important, Hand argued that, since the payment of support was not a taxable event, the conversion of support rights into contractual claims against the estate would not (unlike the analogous conversion of dower, curtesy and similar rights) give rise to

any potential for tax avoidance. *Id.* at 369 (L. Hand, J., dissenting).

We reaffirmed our broad interpretation of "other marital rights" a month later in *Helvering v. United States Trust Co.*, 111 F.2d 576, 577 (2d Cir.), *cert. denied*, 311 U.S. 678, 61 S.Ct. 45, 85 L.Ed. 437 (1940). In that case, a husband and wife had entered into a divorce settlement. *Id.* By its terms, the husband promised to pay his wife $2500 per month for the rest of her life to support her and their daughter. In return, the wife agreed not to seek any other support payments. Later, the parties replaced these periodic payments with a trust fund, the income from which was to be paid to the wife during her lifetime. When the husband died, we had to decide whether the corpus of the trust should be included in his estate. *Id.*

We found that insofar as the trust fund was intended to replace support payments to the wife, it had been traded for the wife's "marital right" to support. To that extent, the trust was not based on adequate consideration and therefore had to be included in the husband's estate. *Id.* The daughter's right to support, by contrast, arose from the parent-child relationship and was therefore not a marital right. To the extent that the $2500 monthly payments (or, more precisely, the portion of the trust fund intended to replace that stream of payments) were intended to cover child support, the creation of the trust fund *was* supported by adequate consideration and therefore its corpus was not includible in the taxable estate. *Id.* at 578.

In the third case of the trio, *Adriance v. Higgins*, 113 F.2d 1013 (2d Cir.1940), a husband and wife signed a separation contract

> in which they agreed that each should live separate from the other during the remainder of their lives and *that neither should have any rights in the property of the other* and neither should contest the will of the other or, upon the death of the other, should claim anything from his or her estate.

*Id.* at 1015–16 (emphasis added). The husband promised to pay the wife $15,000 up front, plus $4500 per year for the rest of her life out of a special trust. *Id.* at 1016. We

held that, upon the husband's death, the entire trust was includible in his taxable estate. In consideration for the $4500 annuity (and the commensurate life interest in the trust fund), the wife had given "her release of dower *and of other rights in her husband's property* and of her claim for support." *Id.* (emphasis added). The release of such rights, we found, were not "adequate considerations 'in money or money's worth' within the meaning of [§ 2043(b)]." *Id.; see also Commissioner v. Maresi*, 156 F.2d 929, 930 (2d Cir.1946) (following *Meyer's Estate, United States Trust,* and *Adriance* ).

## B. *The Commissioner's Changed Position and Ensuing Judicial Decisions*

Under these three cases, there can be no doubt that the interest before us today would be taxable. But shortly after our decisions, the Commissioner of Internal Revenue abandoned his view that a waiver of support rights cannot serve as consideration under § 2043(b)(1). Rev. Rul. 12367, 1946–2 C.B. 166, 166–69. Instead, the Commissioner concluded that a payment made in lieu of support rights "merely amounts to the liquidation of a presently existing obligation, the satisfaction of which does not have the effect of diminishing or depleting the husband's estate to any greater extent than the payment of other existing legal obligations." *Id.* at 168. The Commissioner therefore announced that he would no longer follow *Meyer's Estate* or *United States Trust* "to the extent that they hold that the right of a divorced wife to support from a former husband during the joint lives of the parties is a marital right in his property or estate." *Id.; see also* Rev. Rul. 71–67, 1971–1 C.B. 271 (ruling that payments due to a decedent's wife, under a separation agreement in which she waived her support rights, are deductible by the estate to the extent of the commuted value of the support rights).

The same position was eventually adopted by the Tax Court. In *Estate of Glen v. Commissioner,* 45 T.C. 323, 338–42, 1966 WL 1216 (1966), that court rejected the broad reading of § 2043(b)(1) that we had taken in *Meyer's Estate* and its progeny. Section 2043(b)(1), the court suggested, should be

limited in its application to the release of rights that accrue to the surviving spouse upon the decedent's death. The court further opined that "the principal target" of § 2043(b)(1)

> is dower and curtesy or substitutes therefor under local law. Rather than read as intending to cover interests which may come into possession prior to decedent's death (such as rights arising upon divorce), the third phrase "other marital rights in the decedent's property or estate," should be read as no more than a backstop, or a catchall, designed to cover any interest in a surviving spouse which by reason of some technical definitional peculiarity in local law might not fit the mold of the first two phrases. See the dissenting opinion in *Meyer's Estate v. Commissioner*, 110 F.2d 367, 369 ..., in which Judge Learned Hand took this approach to interpreting the phrase "marital rights in the decedent's property or estate."

> For example, since dower and curtesy are commonly associated only with real property, if under State law a surviving spouse is entitled to some interest in decedent's personalty, this interest is of a type which the third phrase was designed to cover—since it would not be covered by the first two phrases. Statutory interpretation of section 2043(b) is an almost classic case for application of the doctrine *ejusdem generis*.

45 T.C. at 339–40 (footnote omitted).

Subsequently, in *Estate of Carli v. Commissioner*, 84 T.C. 649, 1985 WL 15335 (1985), the Tax Court held that, in a prenuptial agreement, a wife's relinquishment of her community property rights in her future husband's earnings during marriage constituted adequate and full consideration for the husband's promise to give her a life estate in their residence upon his death if they remained married. Citing *Glen*, the Tax Court explained that it had consistently taken the position that

the phrase "other marital rights", for the purposes of determining whether a transfer or a claim was made for "consideration in money or money's worth", embraces those rights conferred upon a surviving spouse by local law upon the death of his or her spouse. This definition does not, however, include any rights a spouse may have by virtue of the marriage in the other spouse's property during their joint lives.

84 T.C. at 657 (citations omitted).[3]

Significantly, moreover, no other circuit to consider the issue has adopted the broad rule we set forth in *Meyer's Estate*. Those circuits have instead followed the Commissioner and held that certain other rights connected to the marital relationship—such as spousal support rights—can sometimes constitute suitable consideration for a transfer of property under the estate and gift tax laws. See *Estate of Kosow*, 45 F.3d 1524, 1531 (11th Cir.1995) (citing *Glen* and *Carli* with approval); *Estate of Iversen v. Commissioner*, 552 F.2d 977, 985 (3d Cir.1977); *Leopold v. United States*, 510 F.2d 617, 624 (9th Cir.1975); *Sherman v. United States*, 462 F.2d 577, 578 (5th Cir.1972); *District of Columbia v. Lewis*, 288 F.2d 137, 140 (D.C.Cir.) (expressly declining to follow *Meyer's Estate* ), *cert. denied*, 368 U.S. 818, 82 S.Ct. 33, 7 L.Ed.2d 24 (1961).

More importantly, while we have never had occasion explicitly to reconsider our 1940 precedents, we have since 1946 decided two cases based on the Commissioner's concessions that support rights may constitute consideration in money or money's worth. In *Commissioner v. Estate of Nelson*, 396 F.2d 519, 522 n. 2 (2d Cir.1968), we noted the parties' concession (presumably based on Rev. Ruling 12367, 1946–2 C.B. 166), "that the relinquishment of support rights ... qualif[ied] ... as ... consideration" under § 2053(c)(1)(A). We expressed no opinion on the correctness of that concession and did not discuss our prior opinions, but we clearly decided the case, in part, on the basis of that concession and contrary to what those prece-

---

**3.** Whether on the facts of the case, and as the source of the life estate that she had received from her husband, the wife had created a retained life estate that would be taxable in her estate under § 2036, or an annuity that could escape taxation, was an issue that could arise only upon her death and hence was not before the court.

dents would require. The same occurred in *Commissioner v. Converse,* 163 F.2d 131, 131 (2d Cir.1947). There too, we accepted the concession and breathed not a word about *Meyer's Estate.*

It is clear, then, that the Commissioner and other courts have rejected the broad reading of the phrase "other marital rights in the decedent's property or estate" suggested in *Meyer's Estate.* It is equally clear that we ourselves have simply ignored that rule in post–1946 cases. Under the circumstances, we choose not to decide this case by relying on our 1940 decisions. Instead, we focus on whether—whatever the meaning of the phrase "other marital rights in the decedent's property or estate" as used in § 2043(b)(1) and regardless of whether a right to equitable distribution might be covered by that phrase [4]—Harriet traded away a right that could be considered "adequate and full consideration in money or money's worth" under § 2053(c)(1)(A). That inquiry requires us to determine whether the arrangement between Harriet and Herbert would bootstrap what would have constituted a taxable transfer—had it been effectuated at the time their contract was entered into—into a deductible claim against Herbert's estate, thereby avoiding taxation.

### C. *The Right Foregone by the Widow*

Here, Harriet had no currently enforceable claim against any of Herbert's property. Nor would she obtain such a claim during their marriage. At most, she traded away a contingent future right to an equitable share of her husband's property in the event of divorce. Had they divorced, that right would have ripened. But no divorce took place and the couple was still married when Herbert died. Harriet's waiver, therefore, did not add a penny to Herbert's estate. And, were we to allow the deduction here sought, the effect would be that his taxable estate would

be diminished by the full amount of what he gave up, in exchange for a waiver that added nothing to it.

In this respect the result would be directly analogous to what would happen if dower and curtesy rights could be given up in exchange for a valid claim against the estate. As in the dower and curtesy cases, if the taxpayer were to prevail in the case before us, a valid deductible claim against the estate would be created in exchange for the waiver of rights that would not have reduced the taxpayer's estate. With dower or curtesy this would happen because they are includible in the gross estate under § 2034. And, as to such marital rights, this is precisely what § 2043(b)(1) was designed to prevent. In this case it would occur because the waiver of rights was contingent and had no value when Herbert died. But either way, the result is the same: Both would convert nondeductible claims into deductible claims, thereby depleting the estate.

In cases of this sort, the Tax Court's decisions give us no cause to believe that valid consideration exists. In *Estate of Glen,* the parties had executed a settlement agreement in contemplation of divorce, which followed within a few months. 45 T.C. at 326–27, 329. In return for her husband's creation of a trust in her favor, the wife agreed to waive her presently enforceable rights to a one-third share of his real and personal property. *Id.* at 331–32. In holding that the wife had given valid consideration in money or money's worth, the *Glen* court specifically limited its holding as follows: "Section 2043(b) is not applicable to the relinquishment of a presently enforceable claim to an outright portion of a spouse's property upon divorce." *Id.* at 342.

■ *Estate of Carli,* which reaffirmed *Glen*'s construction of "other marital rights," is no more helpful to the taxpayer before us. For our purposes, the crucial fact in *Carli*

---

4. Under the law of other circuits and pursuant to the Commissioner's Revenue Rulings, for example, such a right would not constitute an "other marital right[] in the decedent's property or estate" if it were analogous to presently enforceable support rights. And, of course, it would be irrelevant whether it were covered by § 2043(b)(1) at all if the right had been given up

in a property settlement that was consummated within a three-year window around the time of divorce, *see* I.R.C. § 2043(b)(2) (incorporating by reference I.R.C. § 2516), or if the right had been traded away in a settlement agreement that was incorporated into a divorce decree pursuant to *Harris v. Commissioner,* 340 U.S. 106, 71 S.Ct. 181, 95 L.Ed. 111 (1950).

was that the widow's community property interest in her husband's future earnings was also a presently enforceable right. Absent her waiver of that interest, half his earnings would have been excluded from his gross estate because they would have been *her* property, not *his*. That is because "[u]nder a community property system a surviving spouse takes outright ownership of half of the community property, which therefore is not included in the deceased spouse's estate." *Northeastern Pa. Nat'l Bank & Trust Co. v. United States*, 387 U.S. 213, 219, 87 S.Ct. 1573, 1577, 18 L.Ed.2d 726 (1967) (*dictum*); see *Ahmanson Found. v. United States*, 674 F.2d 761, 773 (9th Cir.1981). Because the widow's waiver increased her husband's taxable estate, any transaction in which she received equivalent value would not give rise to tax avoidance.

Likewise, Revenue Ruling 12367, 1946–2 C.B. 166, and the decisions of the other circuits, which do not follow the broad rule of *Meyer's Estate* with respect to support rights, do not further the taxpayer's position. Support rights are presently enforceable rights, and payment of support does not constitute a taxable gift. When a wife gives up her support rights, the estate of her husband is therefore enhanced. It follows that the husband's transfer to her of an equivalent value, in exchange for her waiver of such support payments, does not deplete his estate. But that is not true of a never-ripened right to equitable distribution of property. As we noted earlier, the value of Herbert's taxable estate would go down by the amount of Harriet's claim were the taxpayer to prevail, but it had not risen at all due to Harriet's waiver of her equitable distribution rights.

It follows that the Revenue Rulings, the Tax Court decisions, and the other circuit court case are all consistent with a holding that the transaction before us is taxable. Any other result would give rise to significant avenues of tax avoidance. While we have no reason to believe that the parties

before us had any such motives, it would not be long before others took advantage of the loophole that would ensue. If we accepted the taxpayer's position, husbands and wives might routinely sign prenuptial agreements waiving divorce rights in exchange for terminable interests. And such terminable interests might thereby avoid taxation in the estate of either spouse.[5]

All this is not to say that agreements like the one before us are invalid in other respects. To the contrary, they are fully enforceable. And, if divorce occurs, they may even have significant and favorable tax consequences.[6] In such *actual divorce* circumstances, two things have occurred: the contingent right (which was waived) has come into effect and, as the Court and the Code have recognized, the likelihood of tax avoidance has been rendered negligible by the arms-length nature of the unhappy context. *See Natchez*, 705 F.2d at 674. Under those circumstances, if the agreement is either consummated within the three-year time limit imposed by § 2516 and § 2043(b)(2) (safe harbors created by Congress for certain divorce agreements), or is incorporated in a divorce decree as required by *Harris v. Commissioner*, 340 U.S. 106, 71 S.Ct. 181, 95 L.Ed. 111 (1950) (which insulates some divorce settlements from transfer taxation), or finally, if it has become the equivalent of a nontaxable transfer of support rights (because the right is no longer contingent), the Commissioner would recognize the adequacy of the consideration.

## III. CONCLUSION

 We hold that the estate tax prohibits a person from converting nondeductible claims against the estate into deductible claims through the simple device of a contract. In the current case, Harriet traded away only a contingent right to an equitable distribution of her husband's property in the event of a divorce that never occurred. In exchange, she received the right to a definite

---

5. On the question of possible taxation in the estate of the surviving spouse, see note 3 *supra*.

6. Under the agreement in this case, of course, Harriet would not receive the life interest in

Herbert's apartment if the couple divorced—so there would be no claim against Herbert's estate, and no issue of deductibility at all.

part of her husband's estate. What she gave up added nothing to her husband's estate; what she received depleted it. On these facts, Harriet did not give "adequate and full consideration in money or money's worth" under I.R.C. § 2053(c)(1)(A). Her life interest in her husband's apartment must therefore be included in her husband's estate.

Affirmed.